[No. B053254. Second Dist., Div. Three. Apr. 30, 1991.]

THE PEOPLE, Plaintiff and Appellant, v.
LIBRARY ONE, INC., et al., Defendants and Respondents.

COUNSEL

Ira Reiner, District Attorney, Maurice H. Oppenheim and Dirk L. Hudson, Deputy District Attorneys, for Plaintiff and Appellant.

Weston & Sarno, G. Randall Garrou, John H. Weston, Robert A. Sarno, Richard G. N. Weston, Brown & DePiano and David M. Brown for Defendants and Respondents.

OPINION

**KLEIN, P. J.**—The People appeal the judgment entered after the trial court sustained a demurrer in favor of the defendants (Pen. Code, § 1238, subd. (a)(2)) with respect to a criminal complaint alleging numerous violations of the Los Angeles County Code (LACC) in connection with the operation of Library One, an adult bookstore and picture arcade.[1] The named defendants are Library One, Robert E. Marler (Marler), Kenneth Grant Diffenderfer (Diffenderfer), Ronald E. Dadisman (Dadisman), Robert Wayne Bourgeois (Bourgeois), David L. Brantner (Brantner) and William Kendred (Kendred) (collectively, respondents).

---

[1] All subsequent unspecified section references are to the LACC.

SUMMARY STATEMENT

The trial court found the LACC unconstitutionally failed to state a "specified brief period" within which a business license or conditional use permit had to be granted or denied, and dismissed the action in its entirety following the sustaining of a demurrer to all counts.

The People appealed the trial court's ruling except as to those counts alleging unlicensed operation.

The appellate department of the superior court (the appellate department) affirmed the trial court. It concluded the provisions of the LACC which regulate the maintenance of picture arcades, as opposed to the licensing requirement, were valid and enforceable as against licensees but not as against managers. The appellate department remanded the case for a determination of the capacity of the charged individuals.

We find the LACC provisions regarding issuance of a conditional use permit to be content neutral time, place, and manner restrictions. However, because the LACC fails to provide any specified time within which an application for a business license or a conditional use permit must be granted or denied, it " 'contains the same vice as a statute delegating excessive administrative discretion,' " (*FW/PBS, Inc.* v. *Dallas* (1990) 493 U.S. 215, 226-227 [107 L.Ed.2d 603, 619, 110 S.Ct. 596]) and constitutes an invalid prior restraint.

Because various provisions of the LACC regulating the maintenance of picture arcades define potential offenders in terms of "licensee," they cannot be severed from the invalid licensing provisions and similarly are unenforceable.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The complaint.*

This matter originally consisted of eight misdemeanor complaints filed in the Whittier Judicial District with respect to the operation of an adult bookstore and picture arcade. The alleged violations occurred on January 8, 15, and 27, 1987, February 12, 20, and 26, 1987, July 20, 1988 and between January 1, 1986 and September 30, 1987. (Nos. M870342, M870311, M870587, M871089, M871091, M871090, M8804034, and M8705188.) The trial court consolidated the eight separate complaints under the instant single case number.

Seven of the underlying complaints alleged one count of operating a bookstore without a license (§ 7.90.030) or unlicensed operation of a business (Bus. & Prof. Code, § 16240).

Each of the seven complaints also alleged failure to post and retain a copy of the operation requirements of the LACC in a conspicuous place inside the licensed premises (§ 7.64.110, the posting provision), failure to maintain a picture arcade in such a manner that "the entire interior of such premises wherein the pictures are viewed is visible immediately upon entrance to such premises; and further, that the entire body of any viewing person is also visible immediately upon entrance to the premises" (§ 7.64.140, the visibility provision), and refusal to comply with section 7.64.170 (the access provision) which states, "The licensee shall not permit any doors on the licensed premises to be locked during business hours and, in addition, the licensee shall be responsible that any room or area on the licensed premises shall be readily accessible at all times and shall be open to view in its entirety for inspection by any law enforcement officer."[2]

Two of the seven complaints also alleged one count of operation of a business on an expired license (§ 7.04.020, subd. (b)), and one of the two, as well as one other complaint, additionally alleged one count of failure to have a licensed manager on the premises of a picture arcade (§ 7.64.100).

Library One and Marler were named as defendants in each of the seven complaints. Diffenderfer was named as a codefendant in two complaints (M871089, M871091). Bourgeois (M871090) and Kindred (M870311) each was named as a codefendant in one complaint. Brantner and Dadisman (M8804034) were named as codefendants in one complaint.

The eighth complaint (M8705188) alleged use of premises for an adult business without a conditional use permit (§ 22.28.210), and impermissible use of a structure (§ 22.60.330, subd. (A)) against Marler only.[3]

---

[2] These sections of the LACC are referred to hereinafter as the maintenance provisions or the posting, visibility, and access provisions.

[3] Some of the complaints have attached copies of the police reports, and in one case the police reports have been incorporated by reference (M8804034). This complaint alleged three licensing violations and violations of the posting, visibility and access provisions against Library One, Marler, Dadisman, and Brantner.

The incorporated police reports indicate Marler is the owner of Library One, that Library One's adult picture arcade license was revoked on September 14, 1983, and that at the time of the alleged violations, it had only a general picture arcade license. The police reports appear to have been incorporated into this complaint in order that the complaint could also serve as an application for an arrest warrant.

Respondents rely on these police reports to permit a factual assault on the complaint despite the fact the case is before us on an appeal from a demurrer which raises only issues of

## 2. *The trial court's ruling.*

The trial court sustained the respondents' demurrer and dismissed each count as to each defendant because "the challenged ordinances rested on unbridled discretion . . . concerning the issuance of the licenses and conditional use permits. [¶] Secondly, . . . each of the ordinances challenged [failed to] . . . provide for a specified brief period of time for issuance of the permit and licenses."

## 3. *The ruling of the Appellate Department.*

With respect to the provisions controlling the issuance of conditional use permits, the appellate department held the First Amendment time limit requirements applicable to issuance of a business license for an adult enterprise (*FW/PBS, Inc.* v. *Dallas, supra,* 493 U.S. 215; *Freedman* v. *Maryland* (1965) 380 U.S. 51 [13 L.Ed.2d 649, 85 S.Ct. 734]), apply by analogy to issuance of a conditional use permit for such a business. It concluded its prior published opinion, *People* v. *Nadeau* (1986) 182 Cal.App.3d Supp. 1, 10-13 [227 Cal.Rptr. 644], which had upheld the validity of the LACC licensing and zoning provisions, no longer correctly stated the law because, in part, the LACC presently "has no time limits at all for granting or denying this [conditional use] permit."

The appellate department found the posting, visibility, and access provisions of the LACC (§§ 7.64.110, 7.64.140, and 7.64.170) severable from the invalid licensing provisions but concluded they could be enforced only against a licensee.

The appellate department affirmed the dismissal of all zoning and licensing counts.

Both sides filed petitions for rehearing or certification and, by order filed October 3, 1990, the appellate department certified to this court that transfer of the cause appeared necessary to settle an important question of law. (Cal. Rules of Court, rule 63(a).)

This court accepted transfer of the case for hearing and decision. (Cal. Rules of Court, rule 62(a).)

### CONTENTIONS

Upon review of the respective petitions for rehearing or certification, the following contentions emerge:

---

law. Because nothing in these police reports alters any of the conclusions reached hereinafter, we need not consider these facts in the discussion which follows.

The People contend the zoning provisions of the LACC respecting issuance of a conditional use permit are content neutral time, place, and manner restrictions which the lower courts improperly tested as prior restraints. They argue the First Amendment limitations applicable to issuance of a business *license* addressed in *FW/PBS, Inc.* do not apply to *zoning* matters.

Next, although they concede the invalidity of the licensing requirements of the LACC, the People maintain the posting, visibility, and access provisions are severable from the licensing regulations and enforceable against managers as well as licensees.

DISCUSSION

1. *The provisions of the LACC respecting the granting of a conditional use permit are content neutral time, place, and manner restrictions of adult businesses.*

    a. *LACC sections in issue.*

Section 22.28.210 allows premises zoned as C-3 to be used for adult businesses "provided a conditional use permit has first been obtained . . . ."

Section 22.56.090, subdivisions A1, A3 and A4 require a hearing officer to approve an application for a conditional use permit upon finding the proposed use will be consistent with the general plan for the area, and that the proposed site is adequate in size and shape and is sufficiently served by streets and other public facilities.

Where the applicant is an adult business, section 22.56.190 states that in addition to the above findings, "the hearing officer shall approve and the commission shall approve an application for a conditional use permit for an adult business where the information submitted by the applicant . . . substantiates the following findings: [¶] 1. The requested use at the proposed location will not adversely affect the use of a . . . place used exclusively for religious worship, school, park, playground or similar use within a 500 foot radius; and [¶] 2. The requested use at the proposed location is sufficiently buffered in relation to residentially zoned areas within the immediate vicinity so as not to adversely affect said areas; and [¶] 3. The exterior appearance of [the] structure will not be inconsistent with the external appearance of commercial structures already constructed or under construction within the immediate neighborhood so as to cause blight, deterioration, or substantially diminish or impair property values within the neighborhood."

b. *Standing.*

■ Initially, the People argue respondents have no standing to attack the zoning provisions. They also urge the " 'party who seeks the exercise of jurisdiction in his [or her] favor' " bears the burden of demonstrating exhaustion of administrative remedies. (*FW/PBS, supra,* 493 U.S. at p. 231 [107 L.Ed.2d at p. 622].) Neither assertion has merit.

Because the respondents have been charged with criminal violations of the ordinances in question, they can hardly be said to lack standing to contest the constitutionality of the ordinance. "There are sound reasons for requiring exhaustion of administrative remedies in some situations, but such a requirement is wholly inappropriate where the party is a *criminal defendant* in circumstances like those present here. [Citation.]" (*Moore* v. *East Cleveland* (1977) 431 U.S. 494, 497, fn. 5 [52 L.Ed.2d 531, 536, 97 S.Ct. 1932].)

Further, as shall be demonstrated below, our determination of invalidity rests upon the finding that the LACC, by failing to provide adequate *procedural* safeguards, invests unconstitutional discretion in the administering body and constitutes a species of prior restraint. "In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his [or her] conduct could be proscribed by a properly drawn statute, and whether or not he [or she] applied for a license. 'One who might have had a license for the asking may . . . call into question the whole scheme of licensing when he [or she] is prosecuted for failure to procure it.' [Citations.]" (*Freedman* v. *Maryland, supra,* 380 U.S. at p. 56 [13 L.Ed.2d at p. 652].)

Plainly, the criminal defendant respondents need not exhaust their administrative remedies; they have standing to attack the LACC on First Amendment grounds.

c. *Standard of review.*

*The LACC is content neutral.*

■ The threshold inquiry in a First Amendment case is whether the legislation at issue is a content-based restriction, or content neutral.

"The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement

with the message it conveys. [Citation.] The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. [Citation.]" (*Ward* v. *Rock Against Racism* (1989) 491 U.S. 781, 791 [105 L.Ed.2d 661, 675, 109 S.Ct. 2746].)

A restriction on speech is content neutral if it can be " ' "justified without reference to the content of the regulated speech." ' [Citations.]" (*United States* v. *Eichman* (1990) 496 U.S. __, __ [110 L.Ed.2d 287, 296, 110 S.Ct. 2404]; *Boos* v. *Barry* (1988) 485 U.S. 312, 320 [99 L.Ed.2d 333, 344, 108 S.Ct. 1157].)

The two leading cases dealing with zoning ordinances such as the conditional use permit in issue here are *Renton* v. *Playtime Theatres, Inc.* (1986) 475 U.S. 41 [89 L.Ed.2d 29, 106 S.Ct. 925], and *Young* v. *American Mini Theatres, Inc.* (1976) 427 U.S. 50 [49 L.Ed.2d 310, 96 S.Ct. 2440].

In *Young* an ordinance adopted by the City of Detroit sought to disperse adult businesses by requiring they not be within 1,000 feet of any 2 other such businesses or within 500 feet of a residential area. In *Renton* the ordinance prohibited adult theaters within 1,000 feet of any residential zones, dwellings, church, park or school.

The plurality in *Young* "upheld the ['Anti-skid Row'] ordinances on the basis they were not directed at restricting speech, but rather were reasonable time, place, and manner regulations necessary to further the city's significant interest in preserving the character of its neighborhoods. The *Young* court concluded that as long as such ordinances were enacted to regulate the location of adult theaters in order to protect neighborhoods from deterioration, increased crime and other harmful secondary effects, they did not offend either the First Amendment or the equal protection clause of the Fourteenth Amendment. [Citations.]" (*People* v. *Superior Court (Lucero)* (1989) 49 Cal.3d 14, 21-22 [259 Cal.Rptr. 740, 774 P.2d 769].)

Similarly, in *Renton* the high court recognized the "Renton ordinance, like the one in [*Young* v.] *American Mini Theatres* [(1976) 427 U.S. 50], does not ban adult theaters altogether, but merely provides that such theaters may not be located within 1,000 feet of any residential zone, single-or multiple-family dwelling, church, park, or school. The ordinance is therefore properly analyzed as a form of time, place, and manner regulation. [Citations.]" (*Renton* v. *Playtime Theatres, Inc., supra,* 475 U.S. at p. 46 [89 L.Ed.2d at p. 37].)

Although the *Renton* ordinance "treated 'theaters that specialize in adult films differently from other kinds of theaters' [citation], . . . the regulation 'was unrelated to the suppression of free expression' because it did not proscribe the content of the films, but rather was concerned predominately with the deleterious secondary effects of adult theaters on the neighboring community. [Citation.]" (*People* v. *Superior Court (Lucero), supra,* 49 Cal.3d at p. 24.)

The high court found the *Renton* ordinance was a "valid governmental response to the 'admittedly serious problems' created by adult theaters[,]' . . . [the City] has not used 'the power to zone as a pretext for suppressing expression,' . . . but rather has sought to make some areas available for adult theaters and their patrons, while at the same time preserving the quality of life in the community at large by preventing those theaters from locating in other areas. This, after all, is the essence of zoning." (*Renton* v. *Playtime Theatres, Inc., supra,* 475 U.S. at p. 54 [89 L.Ed.2d at p. 42].)

*Renton* concluded a zoning ordinance "is aimed not at the *content* of the films shown at 'adult motion picture theatres,' but rather at the *secondary effects* of such theaters on the surrounding community." (*Renton, supra,* 475 U.S. at p. 47 [89 L.Ed.2d at p. 37].)

Had the ordinance in *Renton* been "justified by the city's desire to prevent the psychological damage it felt was associated with viewing adult movies then analysis of the measure as a content based statute would have been appropriate." (*Boos* v. *Barry, supra,* 485 U.S. at p. 321 [99 L.Ed.2d at p. 344].)

■ Because the conditional use permit in issue here, like the ordinances in *Young* and *Renton,* seeks to control the secondary effects of businesses purveying adult material and not the content of the speech, it is a content-neutral time, place, and manner restriction.

d. *Time, place, and manner restrictions are not subject to strict scrutiny.*

"[Z]oning ordinances designed to combat the undesirable secondary effects of [businesses that purvey sexually explicit material] are to be reviewed under the standards applicable to 'content-neutral' time, place, and manner regulations." (*Renton* v. *Playtime Theatres, Inc., supra,* 475 U.S. at p. 49 [89 L.Ed.2d at p. 39].)

"While time, place, or manner regulations must also be 'narrowly tailored' in order to survive First Amendment challenge, we have never

applied strict scrutiny in this context." (*Ward* v. *Rock Against Racism, supra,* 491 U.S. at pp. 798-799, fn. 6 [105 L.Ed.2d at p. 680].)

" '[C]ontent-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication. [Citations.]" (*Renton* v. *Playtime Theatres, Inc., supra,* 475 U.S. at p. 47 [89 L.Ed.2d at p. 37]; White, J., joined by Rehnquist, C. J., conc. in part and dis. in part in *FW/PBS, Inc.* v. *Dallas, supra,* 493 U.S. at p. 244 [107 L.Ed.2d at p. 630]; *Young* v. *New York City Transit Authority* (2d Cir. 1990) 903 F.2d 146, 157; see also, *United States* v. *O'Brien* (1968) 391 U.S. 367, 377 [20 L.Ed.2d 672, 680, 88 S.Ct. 1673] [respecting regulations aimed at mixed activity, i.e., activity which includes elements of "speech" and "nonspeech," there, burning of draft cards].)[4]

Under either the *Renton* or *O'Brien* test the zoning ordinance in issue here is adequate. The restrictions are similar to those approved in *Renton* and *Young* and address the deleterious secondary effects of adult businesses rather than the content of the regulated speech. Because these zoning regulations accomplish a substantial government interest and there is available sufficient other area open to use for adult businesses, the LACC passes muster as a content-neutral time, place, and manner restriction.

2. *Notwithstanding the LACC's validity as a content-neutral time, place, and manner restriction, the absence of any specified time limit on the denial or issuance of a business license or a conditional use permit renders the ordinance an invalid prior restraint.*

a. *Restraints on speech require adequate procedural safeguards.*

██ Licenses which impact First Amendment rights are required to provide adequate procedural safeguards to avoid unwarranted suppression of protected speech. In the seminal case of *Freedman* the high court addressed a statute which required exhibitors of motion pictures to submit films to a State Board of Censors for licensing in advance of exhibition.

---

[4] Under the *O'Brien* test a regulation is sufficiently justified, despite incidental First Amendment impact, "[1] if it is within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on . . . First Amendment freedoms is no greater than is essential to the furtherance of that interest." (*O'Brien, supra,* 391 U.S. at p. 377 [20 L.Ed.2d at p. 680].)

"[T]he O'Brien test 'in the last analysis is little, if any, different from the standard applied to time, place, or manner restrictions.' [Citation.]" (*Ward* v. *Rock Against Racism, supra,* 491 U.S. at p. 798 [105 L.Ed.2d at pp. 679-680].)

Upon criminal conviction for exhibiting a film without a license, the defendant attacked the statute as unconstitutional.

The *Freedman* court reversed the conviction and held (1) the burden of proving a film is unprotected expression must rest on the censor, (2) "the exhibitor must be assured, by statute or authoritative judicial construction, that the censor will, within a *specified brief period*, either issue a license or go to court to restrain showing the film," and (3) "the procedure must also assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license." (*Freedman* v. *Maryland, supra*, 380 U.S. at pp. 58-59 [13 L.Ed.2d at p. 655], italics added.)

In *FW/PBS, Inc.* the Supreme Court applied these safeguards in the context of a licensing scheme adopted by the City of Dallas which regulated sexually oriented businesses. The ordinance stated "the 'chief of police shall approve the issuance of a [sexually oriented business] license . . . to an applicant within 30 days after receipt of an application,' [but] the license may not issue if the 'premises to be used for the sexually oriented business have not been approved by the health department, fire department, and the building official as being in compliance with applicable laws and ordinances.'" (*FW/PBS, Inc.* v. *Dallas, supra*, 493 U.S. at p. 227 [107 L.Ed.2d at p. 619].) Although the chief of police had to act on an application within the specified 30-day period, the absence of time limits on the health, fire and building officials rendered the Dallas ordinance unsupportable.

The *FW/PBS* court stated: "The core policy underlying *Freedman* is that the license for a First Amendment-protected business must be issued within a reasonable period of time, because undue delay results in the unconstitutional suppression of protected speech." (*FW/PBS, Inc., supra*, 493 U.S. at p. 228 [107 L.Ed.2d at p. 620].) An ordinance which fails "to confine the time within which the licensor must make a decision 'contains the same vice as a statute delegating excessive administrative discretion,' [citation]." (*Id.,* at pp. 226-227 [107 L.Ed.2d at p. 619].) "[T]he Dallas scheme does not provide for an effective limitation on the time within which the licensor's decision must be made. It also fails to provide an avenue for prompt judicial review so as to minimize suppression of the speech in the event of a license denial. We therefore hold that the failure to provide these essential safeguards renders the ordinance's licensing requirement unconstitutional insofar as it is enforced against those businesses engaged in First Amendment activity, . . ." (*Id.,* at p. 229 [107 L.Ed.2d at p. 620].)

However, because of the differences in censorship of one movie and the licensing of a business, the *FW/PBS* court concluded "the First Amendment does not require that the city bear the burden of going to court to

effect the denial of a license application or that it bear the burden of proof once in court. Limitation on the time within which the licensor must issue the license as well as the availability of prompt judicial review satisfy the 'principle that the freedoms of expression must be ringed about with adequate bulwarks.' [Citation.]" (*FW/PBS, Inc., supra*, 493 U.S. at p. 230 [107 L.Ed.2d at p. 621].)

We recognize a hearing on a conditional use permit addresses the *location* of a business while a licensing decision addresses the right to *operate* the business. Although *Freedman* and *FW/PBS* involve licensing, the failure to confine the time within which a determination affecting free speech must be made by a governing agency applies equally whether the restriction is a license *or* a conditional use permit. Where there is *absolutely no* specified time limit on the exercise of zoning discretion, that discretion becomes unbridled and renders the ordinance a prior restraint. (*Lakewood* v. *Plain Dealer Publishing Co.* (1988) 486 U.S. 750, 782 [100 L.Ed.2d 771, 799, 108 S.Ct. 2138].) The ability to forestall a zoning determination by inaction necessarily carries with it the power to silence a business engaged in protected speech.

Therefore, regardless of whether the regulation deals with licensing or conditional use permits, failure to provide required procedural safeguards which limit the time within which action is required renders the regulation unenforceable as against businesses engaged in First Amendment activity.

The People respond that the opinion of Justice White, joined by Chief Justice Rehnquist, concurring in part and dissenting in part in *FW/PBS*, indicates the continued vitality of the *Young* and *Renton* cases. We agree that *Young* and *Renton* restrictions, as discussed extensively in the foregoing section, remain a viable means by which a municipality may control the deleterious secondary effects of adult businesses. *FW/PBS* merely requires such controls to provide adequate procedural safeguards so as not to operate as prior restraints.

b. *People v. Nadeau, supra, 182 Cal.App.3d Supp. 1, does not save the constitutionally defective provisions of the LACC.*

The People essentially concede the absence of time limits in the LACC. Nonetheless, they argue the case of *Nadeau* provides the necessary procedural limitation. The *Nadeau* court held: "Although the LACC permit and licensing procedures lack time limits for all the necessary steps, in the absence of a specific time limit, *a reasonable time will be inferred*. [Citation.] Moreover, the code does contain some time limits (see § 22.56.130 [30 days for commission to act on zoning board recommendation]; § 7.10.320 [refer-

ee to report to commission within three days]), which provide a basis for establishing time limits as to other steps." (*People* v. *Nadeau, supra*, 182 Cal.App.3d at p. Supp. 13, italics added.)

However, the *Nadeau* court's approval of an unspecified reasonable time limit for issuance of a license and a conditional use permit cannot withstand analysis after *FW/PBS*.

The memorandum judgment of the appellate department in this case correctly notes the 30-day time limit formerly imposed by section 22.56.130 has been repealed. Although our evaluation of the LACC properly may take into account prior court decisions narrowing the ambit of an otherwise overbroad statute (*Ward* v. *Rock Against Racism, supra*, 491 U.S. at pp. 795-796 [105 L.Ed.2d at p. 678]; *Lakewood* v. *Plain Dealer Publishing Co., supra*, 486 U.S. at p. 791, fn. 11 [100 L.Ed.2d at p. 804]), the implication of a *reasonable* time is inadequate where a *specified* time is required.

■■■■ ■ We conclude *FW/PBS* has overruled *Nadeau* to the extent it held reasonable but unspecified time limits sufficiently satisfy First Amendment constraints for governmental approval of licenses or conditional use permits for businesses engaged in protected speech.[5]

Because we conclude the LACC improperly fails to state a specific period within which a business license or a conditional use permit must be granted or denied, we need not address respondents' further claim the ordinance grants hearing officers unbridled substantive discretion in the decision to grant or deny such license or permits.

---

[5]The People's claim that various sections of the Permit Streamlining Act, Government Code section 65920 et seq., provide adequate time limits for the issuance of a conditional use permit is without merit. The cited provision imposes a six-month deadline for approval or disapproval of an application for a *development permit* from the completion of the application unless an environmental impact report is required in which case the time limit is one year. (Gov. Code, § 65950.)

The act, on its face, applies only to applications for *development projects* which are defined as "a project involving the issuance of a permit for construction or reconstruction but not a permit to operate." (Gov. Code, § 65928.) Development is defined as "the placement or erection of any solid material or structure; discharge or disposal of any dredged material . . . ; grading, removing, dredging, mining, or extraction of any materials; change in the density or intensity of use of land, . . . , and any other division of land . . . ; change in the intensity of use of water, or of access thereto; construction, reconstruction, demolition, or alteration of the size of any structure, . . . ; and the removal or harvesting of major vegetation . . . ." (Gov. Code, § 65927.)

Moreover, the cases construing the Permit Streamlining Act appear uniformly to involve what might be referred to as traditional real estate development, i.e., shopping malls, residential tracts, and the like. *Palmer* v. *City of Ojai* (1986) 178 Cal.App.3d 280 [223 Cal.Rptr. 542], the case relied upon by the People in this regard, involved a building permit for shopping center.

### 3. *The posting, visibility and access provisions cannot be severed from the invalid licensing provisions.*

■ We next address whether the posting, visibility, and access provisions may be severed from the constitutionally infirm licensing provisions and enforced independently. Before turning to this issue we briefly summarize those provisions of the LACC in which the maintenance provisions arise.

The LACC defines a picture arcade as "any premises where there is maintained one or more machines . . . to show still or motion pictures and for which any charge, . . . is required . . . ." (§ 7.64.010.) "A person shall not own, operate, manage, conduct or maintain a picture arcade without first having obtained a license from the tax collector." (§ 7.64.020.)

"All establishments licensed or required to be licensed under this chapter shall have a *responsible person* on the premises to act as manager at all times during which the picture arcade is open. Such manager, if not the licensee, shall first procure a license as such manager . . . ." (§ 7.64.100, subd. (A), italics added.)

The maintenance provisions require the "licensee" to post a copy of the ordinance (§ 7.64.110) and to maintain visibility within (§ 7.64.140), and access to (§ 7.64.170) all parts of the interior of a picture arcade.

Respondents contend the regulatory provisions are so inextricably intertwined with the licensing requirement as to be unenforceable. We agree.

■ " '[I]f the statute is not severable, then the void part taints the remainder and the whole becomes a nullity.' " (*Santa Barbara Sch. Dist.* v. *Superior Court* (1975) 13 Cal.3d 315, 330 [118 Cal.Rptr. 637, 530 P.2d 605].) "The cases prescribe three criteria for severability: the invalid provision must be grammatically, functionally, and volitionally separable. [Citations.]" (*Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 821-822 [258 Cal.Rptr. 161, 771 P.2d 1247].)

An enactment passes the grammatical test " '*where the language of the statute is mechanically severable*, that is, where the valid and invalid parts can be separated by paragraph, sentence, clause, phrase, or even single words. [Citations.]' " (*Santa Barbara Sch. Dist.* v. *Superior Court, supra*, 13 Cal.3d at p. 330.) "The courts have uniformly applied the grammatical test to enactments, however adopted, which contain severability clauses. [Citations.]" (*People's Advocate, Inc.* v. *Superior Court* (1986) 181 Cal.App.3d 316, 331 [226 Cal.Rptr. 640].)

Title 7 of the LACC contains a severability clause. Section 7.02.390 states: "If any provision of Ordinance 5860 and this Title 7 or the application thereof to any person or circumstance is held invalid, the remainder of the ordinance and the application of such provision to other persons or circumstances shall not be affected thereby."

Because the discrete sections of title 7 are grammatically complete and distinct and title 7 contains a severability clause, the grammatical test is met here.

We next consider whether the sections are functionally separate. That is, are they capable of independent application. In order to pass this test "[t]he remaining provisions must stand on their own, unaided by the invalid provisions nor rendered vague by their absence nor inextricably connected to them by policy considerations. They must be capable of separate enforcement." (*People's Advocate, Inc.* v. *Superior Court, supra*, 181 Cal.App.3d at p. 332.)

Each of the maintenance provisions defines an offender by reference to the definition of "licensee." The only way to enforce the maintenance provisions is to draw the definition of "licensee" from the licensing requirement and conclude "licensee," as used in the maintenance provisions, means any *person* who owns, operates, manages, conducts or maintains a picture arcade. (§ 7.64.020.)

However, in so doing, the maintenance provisions necessarily are aided by the invalid licensing provision, and the absence of the licensing statute renders the maintenance provisions vague. We therefore conclude the maintenance provisions are not functionally separable from the licensing provisions and cannot be enforced independently.

Our resolution of this issue obviates any need to address the volitional element of the severability test and renders moot the People's assertion the maintenance provisions may be enforced against managers, as opposed to licensees.

CONCLUSION

Because the LACC fails to state a specific time limit within which a license or a conditional use permit must be granted or denied to a business engaged in First Amendment activity, it constitutes an invalid prior restraint.

Because the posting, visibility, and access provisions of the LACC rely upon the invalid licensing requirement to define offenders, those provisions

cannot be severed and enforced independent of the invalid licensing provision.

## DISPOSITION

The judgment of dismissal (order sustaining demurrer) is affirmed.

Croskey, J., and Hinz, J., concurred.