[No. B052176. Second Dist., Div. Seven. July 25, 1991.]

J. L. THOMAS, INC., et al., Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

Joshua Kaplan for Plaintiffs and Appellants.

De Witt W. Clinton, County Counsel, Charles J. Moore and Richard D. Weiss, Deputy County Counsel, Hill, Farrer & Burrill, Darlene Fischer Phillips and Dean E. Dennis for Defendants and Respondents.

OPINION

LILLIE, P. J.—J. L. Thomas, Inc., and J. L. Thomas, doing business as Hollywood East, appeal from a judgment denying their petition for writ of

mandate in which plaintiffs (hereinafter Thomas) challenged (1) the decisions and orders of the Los Angeles County Regional Planning Commission (Commission) denying an application for a conditional use permit to operate a cabaret featuring live adult entertainment and (2) the decision of the Los Angeles County Board of Supervisors (Board) denying Thomas's appeal of the Commission's decision.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Hollywood East, a cabaret featuring adult entertainment and located at 13217 East Valley Boulevard, was established before December 22, 1978, the date of enactment of the county's adult entertainment ordinance. The cabaret is located within the M-1-BE zone (light industrial; billboard exclusion) which permits the cabaret use with a conditional use permit.

In 1984, Thomas applied to continue the cabaret use, which application was denied by the Board on December 20, 1984; in 1986, Thomas applied for a conditional use permit, which was granted, with 13 conditions, by the Commission; although there was no opposition testimony at the Commission hearing, the Commission's decision was appealed by a local homeowners association and the Los Angeles County Sheriff; the Board held a de novo hearing and denied the application for a conditional use permit in December 1987; Thomas then challenged the denial by petition for writ of mandate in the superior court, which denied the petition; the denial was upheld by the Court of Appeal in April 1989, with a remittitur issued on July 26, 1989.

On July 24, 1989, Thomas filed the application for conditional use permit which is the subject of this appeal.[2] At a public hearing on September 27, 1989, a planning department staff member testified that the one-story cabaret, located on the north side of six-lane East Valley Boulevard, was bounded on the north by a railroad right-of-way and then industrial uses. To the east, west and south of the cabaret was a mix of retail commercial and light industrial uses. Across East Valley Boulevard and further south of the commercial and industrial uses were single family residences.

Immediately adjacent to the cabaret on the east was a radiator repair business; to the west of the cabaret was a parking lot and then a used car

---

[1] Although it is unclear from our record whether Hollywood East offers nude or topless entertainment, there is no issue on this appeal that the business falls within the definition of adult business in Los Angeles County Code section 22.08.010.

[2] Under the county code, an applicant has the right to file for a new conditional use permit after one year has passed following a prior final administrative decision requesting the same, or substantially the same, permit. (See L. A. County Code, § 22.56.020.)

dealership. Since the time of the previous application, Thomas had replaced the roof on the building and had removed a wall sign. The staff member also testified that Thomas had been continuing to offer adult entertainment on the property without a permit; there had been various enforcement actions pertaining to the use of the property, and a week before the hearing, staff members witnessed adult entertainment at the cabaret.

The Commission received letters from six individuals or entities in opposition to the application. The letters characterized the cabaret as a "blight," and stated that "concerned parents . . . don't want their children exposed to this type of sleazy lifestyle," that the cabaret "attracts an undesirable clientele," and is "an unwelcome blot on our community." Four people spoke against the application. A representative of the Workman Mill Association stated that although she did not know whether patrons of the cabaret "come over as far as the park on San Angelo or not," her association "just doesn't feel that this establishment gives any benefit back to the community"; a resident of the area stated that they were trying hard to improve Valley Boulevard, but "Hollywood East is not an improvement. . . . We don't want it." A nearby motel owner asserted that a mile to the east, "there are many prostitution girls walking along the Garvey Avenue in El Monte," and that "the customers from the Hollywood East, they do have an effect, I believe. Because after seeing those topless dancings, . . . they do carry some adverse effects to our businesses . . . . I am required from the neighborhood to run a decent motel."

According to uncontradicted testimony of Thomas's attorney in favor of the application, since the time of the prior application, Thomas had expended $20,000 in improving the premises, putting on a new roof, sandblasting and painting the building, removing signs, landscaping, and soundproofing; the graffiti was painted over every week, and in fact the cabaret was the only commercial structure in a two-mile square area without graffiti all over the front of it and with green landscaping; the parking lot was sufficient in size for the patrons and a security guard was posted in the parking lot; a daily trash service prevented trash accumulation. Thomas's attorney presented photographs of the cabaret and the surrounding area which showed that the area was not noted for its "immaculate upkeep," and the cabaret "stands out as being superlative in its maintenance"; the interior of the building cannot be seen from the outside; minors are not admitted inside; there were no garish advertisements or explicit statements on the outside of the building; and within the past year, there had been no complaints with regard to trash accumulation, loitering, boisterous conduct, drug sales, noise, or prostitution involving the cabaret. Thomas also presented a petition signed by 10 commercial and residential occupants in the area in favor of the cabaret.

There was no church, temple, school, park or playground within 500 feet of the cabaret.

By findings and order dated November 1, 1989, the Commission denied the application, concluding that Thomas failed to substantiate the required findings for a conditional use permit under Los Angeles County Code sections 22.56.090 and 22.56.190.[3] The Commission found that the applicant has continued to offer live nude dancing "in disregard of the court's order and without a valid permit"; redevelopment activities have occurred in the vicinity to benefit commercial vitality and property values along Valley Boulevard, and the adult entertainment land use "is inconsistent with the furtherance of these economic goals" and "tends to diminish the value of the considerable public and private investment already made"; that the cabaret has a "history of complaints about noisy patrons congregating in the parking lot and disturbing the surrounding neighborhood"; and the nocturnal disturbances and adult nature of the entertainment offered render the cabaret incompatible with the surrounding businesses and residences.

Thomas's appeal to the Board was denied on December 21, 1989. Thomas thereafter filed in the superior court a petition for writ of mandate, challenging the Commission's findings as unsupported by the evidence, and also challenging the relevancy of the findings to the decision to deny the conditional use permit. In opposition to the petition, defendants[4] argued

---

[3]County Code section 22.56.190 provides: "A. In addition to the findings required pursuant to subsections A1, A3 and A4 of Section 22.56.090, the hearing officer shall approve and the commission shall approve an application for a conditional use permit for an adult business where the information submitted by the applicant and/or presented at public hearing substantiates the following findings: [¶] 1. The requested use at the proposed location will not adversely affect the use of a church, temple, or other place used exclusively for religious worship, school, park, playground or similar use within a 500-foot radius; and [¶] 2. The requested use at the proposed location is sufficiently buffered in relation to residentially zoned areas within the immediate vicinity so as not to adversely affect said areas; and [¶] 3. The exterior appearance of the structure will not be inconsistent with the external appearance of commercial structures already constructed or under construction within the immediate neighborhood so as to cause blight, deterioration, or substantially diminish or impair property values within the neighborhood."

Section 22.56.090 provides in pertinent part: "A. The hearing officer shall approve an application for a conditional use permit where the information submitted by the applicant and/or presented at public hearing substantiates the following findings: [¶] 1. That the proposed use will be consistent with the adopted general plan for the area. . . . [¶] 3. That the proposed site is adequate in size and shape to accommodate the yards, walls, fences, parking and loading facilities, landscaping and other development features prescribed in this title, or as is otherwise required in order to integrate said use with the uses in the surrounding area; and [¶] 4. That the proposed site is adequately served: a. By highways or streets of sufficient width and improved as necessary to carry the kind and quantity of traffic such use would generate, and b. By other public or private service facilities as are required."

[4]Defendants and respondents are the County of Los Angeles, Board of Supervisors of the County of Los Angeles, the Department of Regional Planning of the County of Los Angeles,

that Thomas had not met his burden of proof under county code sections 22.56.190 and 22.56.090, and for the first time also expressly relied upon county code section 22.04.110 to justify the denial of the permit.

Section 22.04.110 provides in pertinent part that "No application for any permit required pursuant to this title shall be accepted for processing or approved where an existing land use, not previously authorized by any statute or ordinance, is being maintained or operated in violation of any applicable provision of this title, or any condition of approval of a land use permit."

In denying the petition for writ of mandate, the court expressly indicated that it was relying only on Los Angeles County Code section 22.04.110, and did not address the findings required under section 22.56.190.[5] On appeal from the judgment denying the petition for writ of mandate, Thomas contends that county code section 22.56.190 (which incorporates portions of section 22.56.090) sets out the criteria for the grant or denial of a conditional use permit for an adult business, that he demonstrated he was entitled to such permit under such criteria, and that respondents blatantly ignored such criteria and based their denial on improper and irrelevant factors. Thomas also contends that section 22.04.110 cannot properly be applied to an activity that has been accorded First Amendment protection, and in any event, the cabaret use was previously authorized by ordinance prior to 1978. ██ Appellants also argue that, as applied to Hollywood East, the county's regulatory scheme for conditional use permits is an unconstitutional prior restraint because it lacks a specified time limit on the exercise of zoning discretion.[6]

and Supervisors Peter F. Schabarum, Kenneth Hahn, Edmund D. Edelman, Deane Dana and Michael F. Antonovich.

[5]The court stated that it had issued a tentative ruling in the matter with respect to section 22.04.110, "but the court has not gone on in this matter and held that the—there is substantial evidence to support the decision on the merits." We interpret the above language, in the context of the entire hearing on the petition, to indicate that the trial court specifically did not address the issue of the sufficiency of the evidence to support the findings under county code section 22.56.190, but based its decision only on county code section 22.04.110.

[6]Although the issue of whether the ordinance constitutes an invalid prior restraint was raised for the first time in appellants' reply brief, we conclude good cause exists for appellants' failure to raise the point before (see *Trustees of Capital Wholesale Electric etc. Fund* v. *Shearson Lehman Brothers, Inc.* (1990) 221 Cal.App.3d 617, 627 [270 Cal.Rptr. 566]), because the case relied upon by appellants (*People* v. *Library One, Inc.* (1991) 229 Cal.App.3d 973 [280 Cal.Rptr. 400]) was decided after their opening brief had been filed. Inasmuch as we have afforded the parties an opportunity to respond to the issue, which is one of law, we deem it appropriate to address it on its merits. (*Hittle* v. *Santa Barbara County Employees Retirement Assn.* (1985) 39 Cal.3d 374, 391, fn. 10 [216 Cal.Rptr. 733, 703 P.2d 73].)

In response to *Library One*, section 22.56.190 was amended on May 28, 1991, to provide specific time limits for the approval or disapproval of conditional use permits for adult businesses and for disposition of appeals to the Board. On this appeal we are concerned only with former section 22.56.190, which was applied to Thomas.

I

FORMER ORDINANCE CONSTITUTES AN INVALID PRIOR RESTRAINT

■ It has been held that when an applicant for a permit from the California Coastal Zone Conservation Commission sought to challenge the application of a statute to it, the applicant "is essentially seeking to review the validity of an administrative action and . . . such review is properly brought under the provisions of section 1094.5 of the Code of Civil Procedure rather than by means of declaratory relief." (*State of California* v. *Superior Court* (1974) 12 Cal.3d 237, 251 [115 Cal.Rptr. 497, 524 P.2d 1281].) Accordingly, we conclude the issue is appropriately considered on this appeal.

■ Respondents' claim that Thomas has not exhausted his administrative remedy on the issue is without merit. Thomas did apply for a permit. "In any event, it has been stated by the California Supreme Court that a person has standing to challenge an ordinance or a statute invalid on its face without first exhausting the licensing or permit procedures. (*City of Santa Barbara* v. *Adamson* (1980) 27 Cal.3d 123, 135 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219] . . . .)" (*Ebel* v. *City of Garden Grove* (1981) 120 Cal.App.3d 399, 409 [176 Cal.Rptr. 312].)

■ Citing *Miller* v. *Board of Medical Quality Assurance* (1987) 193 Cal.App.3d 1371 [238 Cal.Rptr. 915], respondents also argue that "the *Library One* decision should not apply retroactively to negate Los Angeles County's jurisdiction or otherwise affect its decision in this case." However, *Miller* dealt with the issue of a collateral attack on a prior final act of an administrative agency. The instant appeal involves a direct review. Moreover, " '[a]s a matter of normal judicial operation, even a non-retroactive decision [i.e., one that cannot serve as a basis for collateral attack on a final judgment] ordinarily governs all cases still pending on direct review when the decision is rendered.' " (*People* v. *Guerra* (1984) 37 Cal.3d 385, 400 [208 Cal.Rptr. 162, 690 P.2d 635].) Further, respondents offer no pertinent authority to support a departure from the general rule that judicial decisions are given retroactive effect. (See *Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 978-984 [258 Cal.Rptr. 592, 772 P.2d 1059].)

Respondents do not contest the fact that Thomas's adult business involves an activity—nonobscene topless or nude dancing—which is accorded First Amendment protection. (See *Schad* v. *Mt. Ephraim* (1981) 452 U.S. 61, 65-66 [68 L.Ed.2d 671, 678, 101 S.Ct. 2176]; *City of Rancho Cucamonga* v. *Warner Consulting Services, Ltd.* (1989) 213 Cal.App.3d 1338, 1342 [262 Cal.Rptr. 349].)

*People* v. *Nadeau* (1986) 182 Cal.App.3d Supp. 1 [227 Cal.Rptr. 644] held that procedural safeguards which are designed to avoid unwarranted suppression of speech, and which safeguards were required of the censorship ordinance in *Freedman* v. *Maryland* (1965) 380 U.S. 51 [13 L.Ed.2d 649, 85 S.Ct. 734], do not apply to the licensing under a zoning ordinance of an adult theater or bookstore. (182 Cal.App.3d at pp. Supp. 11-12.)

*Nadeau* also held that although the former Los Angeles County Code permit and licensing procedures lack time limits for all the necessary steps, "in the absence of a specific time limit, a reasonable time will be inferred." (182 Cal.App.3d at p. Supp. 13.)

As recognized in *People* v. *Library One, Inc., supra*, 229 Cal.App.3d at p. 987, *Nadeau* cannot withstand analysis after *FW/PBS, Inc.* v. *Dallas* (1990) 493 U.S. 215 [107 L.Ed.2d 603, 110 S.Ct. 596], in which the Supreme Court applied the *Freedman* procedural safeguards to a city licensing scheme of sexually oriented businesses. The court in *FW/PBS, Inc.* explained that "[t]he core policy underlying [*Freedman* v. *Maryland, supra*, 380 U.S. 51 (13 L.Ed.2d 649, 85 S.Ct. 734)] is that the license for a First Amendment-protected business must be issued within a reasonable period of time, because undue delay results in the unconstitutional suppression of protected speech." (493 U.S. at p. 228 [107 L.Ed.2d at p. 620].) A licensing scheme which fails to confine the time within which the licensor must make a decision contains the same vice as a statute delegating excessive administrative discretion. (*Id.*, at p. 228 [107 L.Ed.2d at p. 619].)

A hearing on a conditional use permit addresses the location of a business while a licensing decision addresses the right to operate the business. ■ Although *Freedman* and *FW/PBS* involve licensing, the failure to confine the time within which a determination affecting free speech must be made by a governing agency applies equally whether the restriction is a license or a conditional use permit. (*People* v. *Library One, Inc., supra*, 229 Cal.App.3d at p. 986.)

We cannot save the former ordinance by implying a reasonable time limit. A reasonable time limit is not the same as a specific time limit, which provides a definite guideline for the exercise of zoning discretion. The lack of a specific time limit on the exercise of zoning discretion renders that discretion unbridled; the ordinance becomes a prior restraint. (*Lakewood* v. *Plain Dealer Publiching Company* (1988) 486 U.S. 750, 757 [100 L.Ed.2d 771, 108 S.Ct. 2138].)

We conclude that the former provisions of the county code pertaining to the issuance of a conditional use permit for Hollywood East constitute an

invalid prior restraint. Because of the lack of time limits on the exercise of discretion, the provisions are invalid prior restraints, whether the applicable substantive criteria governing the issuance of such permit are limited to those set out in Los Angeles County Code section 22.56.190, or include a consideration of section 22.04.110.

## II

### SUFFICIENCY OF FINDINGS TO SUPPORT DECISION

■ Code of Civil Procedure section 1094.5, which structures the procedure for judicial review of adjudicatory decisions by administrative agencies, "clearly contemplates that at a minimum, the reviewing court must determine both whether substantial evidence supports the administrative agency's findings and whether the findings support the agency's decision. Subdivision (b) of section 1094.5 prescribes that when petitioned for a writ of mandamus, a court's inquiry should extend, among other issues, to whether 'there was any prejudicial abuse of discretion.' Subdivision (b) then defines 'abuse of discretion' to include instances in which the administrative order or decision 'is not supported by the findings, *or* the findings are not supported by the evidence.' " (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 514-515 [113 Cal.Rptr. 836, 522 P.2d 12], original italics.)

"[I]mplicit in section 1094.5 is a requirement that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order. If the Legislature had desired otherwise, it could have declared as a possible basis for issuing mandamus the absence of substantial evidence to support the administrative agency's action. By focusing, instead, upon the relationships between evidence and findings and between findings and ultimate action, the Legislature sought to direct the reviewing court's attention to the analytic route the administrative agency traveled from evidence to action." (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at p. 515.)

■ The presumption that an agency's rulings rest upon the necessary findings and that such findings are supported by substantial evidence does not apply to agencies which must expressly state their findings and must set forth the relevant supportive facts. (See *City and County of San Francisco* v. *Board of Permit Appeals* (1989) 207 Cal.App.3d 1099, 1107 [255 Cal.Rptr. 307].)

■ In the instant case, the Commission's decision states that the denial of the conditional use permit was premised on Thomas's purported failure to

establish the criteria set out in Los Angeles County Code sections 22.56.190 and 22.56.090. The Commission and Board did *not* purport to base their decisions upon county code section 22.04.110, which involves different factual considerations than the criteria set out in sections 22.56.190 and 22.56.090. Although there are findings to the effect that Thomas was offering adult entertainment without a permit and in violation of a court order, there was no finding pursuant to section 22.04.110 that the existing land use was "not previously authorized by any statute or ordinance." In fact, such a finding appears to contradict the express finding that before 1978, the cabaret use was permitted under the prior ordinance.

We conclude that under pertinent principles of appellate review, we cannot rely upon Los Angeles County Code section 22.04.110 to justify the administrative decisions herein. To do so, we would have to "'speculate upon the portions [of the record] which probably were believed by the board, guess at the conclusions drawn from credited portions, construct a basis for decision, and try to determine whether a decision thus arrived at should be sustained. In the process, the court is required to do much that is assigned to the board.'" (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at p. 516, fn. 15.) Because the requirements in Code of Civil Procedure section 1094.5 also serve "to persuade the parties that administrative decision-making is careful, reasoned, and equitable" (*id.,* at p. 517), such goals would not be furthered by a procedure whereby we imply in support of the agency decisions not only factual findings, but a legal theory that was not expressly addressed by the Commission or the Board. Accordingly, in this appeal, we are not called upon to interpret section 22.04.110 or to decide the issue, raised by appellants, of whether section 22.04.110 can properly apply to the issuance of a conditional use permit for an adult business.

We thus proceed to determine whether the findings are legally relevant to the decision to deny the conditional use permit based on the criteria set out in county code section 22.56.190. (See *City and County of San Francisco* v. *Board of Permit Appeals, supra,* 207 Cal.App.3d at p. 1109.)

The Commission found, inter alia, that the adult entertainment land use is inconsistent with the economic goal of revitalizing the commercial and industrial neighborhood, it diminishes the value of public and private investments already made, there is a history of complaints about noisy patrons who congregate in the parking lot and disturb the neighborhood, and the nocturnal disturbances and the adult nature of the entertainment render the cabaret incompatible with the surrounding businesses and residents. None of the above findings specifically address the criteria set out in Los Angeles County Code section 22.56.190. (*Ante,* fn. 3.)

We find without merit respondents' suggestion that the Commission *impliedly* found that Thomas failed to establish that the cabaret use will be consistent with the general plan for the area (L.A. County Code, § 22.56.090, subd. A.1), and that the cabaret use was sufficiently buffered in relation to the nearby residential areas (L.A. County Code, § 22.56.190, subd. A.2). No such findings were made. The findings do not address the issue of the general plan or the issue of whether the cabaret use was sufficiently buffered from nearby residential uses.[7]

Nor do we interpret the finding that the adult entertainment land use diminishes the value of public and private investments in redevelopment activities to address the factor set out in section 22.56.190, subdivision A.3. That factor requires that the "*exterior appearance* of the structure will not be inconsistent with the external appearance of commercial structures already constructed or under construction within the immediate neighborhood so as to cause blight, deterioration, or substantially diminish or impair property values within the neighborhood." (L.A. County Code, § 22.56.190, subd. A.3, italics added.) The findings do not address the issue of exterior appearance.

It is abundantly clear from our record that the findings do not even address the criteria set out in section 22.56.190, much less whether Thomas had provided sufficient information to establish those criteria; in fact the decision's conclusion that Thomas had not substantiated the criteria set out in sections 22.56.190 and 22.56.090 comes as a complete non sequitur from the findings.[8] We conclude that the findings do not support the decision.

---

[7]Inasmuch as the zoning classification M-1-BE allows a cabaret use with a conditional use permit, it is difficult to conceive how such use can be inconsistent with the general plan unless the M-1-BE zoning classification is itself inconsistent with the general plan or the general plan is deficient. Respondents do not argue the M-1-BE zoning classification is inconsistent with the general plan or that the general plan is not in conformity with statutory criteria. (See *Neighborhood Action Group* v. *County of Calaveras* (1984) 156 Cal.App.3d 1176, 1187 [203 Cal.Rptr. 401]; *Hawkins* v. *County of Marin* (1976) 54 Cal.App.3d 586, 594 [126 Cal.Rptr. 754].)

[8]It is also apparent from our record why this is so. The members of the public who spoke against the permit application provided no evidence that the cabaret use caused any adverse effects on the surrounding neighborhood; they simply objected to the type of entertainment offered therein. In fact, it is clear from the record that Thomas provided uncontradicted information to substantiate the required findings for a conditional use permit; however, the Commissioners simply chose to ignore the applicable criteria. One commissioner remarked that Thomas "would say that this body has absolutely no discretion in this matter. That there is a three-prong test and if it meets the three prongs, we must approve this conditional use permit without any discretion on our part. And I don't happen to believe that. . . . I think we have the right to take into consideration those factors that we feel are beneficial or detrimental to the surrounding properties and to the existing use of land in that particular area."

Another commissioner lamented that "I feel that the three-prong test is terribly restrictive. It's an imposition on this body. . . ."

We also agree with appellants that the evidence is insufficient to support certain of the irrelevant and inconclusive findings that were made. With respect to the operation of the cabaret during the year preceding the 1989 hearing for application for a conditional use permit, there is no substantial evidence to support the findings that the cabaret tended to diminish the value of nearby properties, that the use was inconsistent with the redevelopment activities to increase commercial vitality in the area, that there was a history of complaints about noisy patrons in the parking lot, and that the cabaret caused nocturnal disturbances in the neighborhood.

## DISPOSITION

The judgment denying the petition for writ of mandate is reversed and the trial court is directed to grant the petition for writ of mandate in accordance with the views expressed herein. Appellants are entitled to their costs on appeal.

Johnson, J., and Woods (Fred), J., concurred.