Opinion
SOVEN, J.
In these cases, defendants were convicted of violating either Business and Professions Code section 16240 (operating a business without a license) or Los Angeles County Code section 7.140.020, subdivision B (engaging in a business with a revoked license). After defendants’ demurrers to the complaints were overruled, each defendant submitted the matter on facts as stipulated by the parties, was found guilty as charged, and placed on probation on certain conditions. All defendants have appealed. We affirm.
Defendants’ adult bookstore and movie arcade is subject to Los Angeles County zoning restrictions. We conclude that the standards for the issuance of the required conditional use permit and business license are sufficiently precise to be constitutional, and that defendants have not shown that the procedures to obtain the necessary permit and license result in an impermissible restraint on defendants’ First-Amendment-protected business.
*Supp. 5 Facts
Defendants were employed by “Library One,” an adult bookstore and motion picture arcade located in Los Angeles County. The store and arcade operation did not possess a business license, as required by the Los Angeles County Code.
The Los Angeles County Code (LACC)[1] requires an adult bookstore or adult motion picture arcade in Los Angeles County to obtain a business license. The license will be denied if the building, structure or location of the building does not comply with all state and local health, zoning, fire and safety requirements. (§ 7.08.070.) To obtain a license, the operator must first obtain a conditional use permit, which permit includes the condition that the use not be within 1,000 feet of other adult businesses. (§ 22.28.210.)
A conditional use permit must be issued if: 1. The requested use will not “adversely affect” the use of any place used for religious worship, school, park, playground or similar use within a 500-foot radius (§ 22.56.190, subd. Al); 2. The requested use is “sufficiently buffered” with respect to residential areas so as not to “adversely affect” such areas (§ 22.56.190, subd. A2); 3. The exterior appearance of the structure will “not be inconsistent” with the exterior appearance of other commercial structures in the area; so as not to cause “blight, deterioration, or substantially diminish or impair property values” . . . (§ 22.56.190, subd. A3); 4. The proposed use will not be in “substantial conflict” with any general plan for the area (§ 22.56.090, subd. Al);5. The proposed site is adequately sized and shaped to accommodate the developmental features required by section 22.56.090, subdivision A3; 6. The proposed site is adequately served by highways or streets, and any other public or private facilities that may be required. (§ 22.56.090, subd. A4.)[2]
*Supp. 6 The procedures for obtaining, first, the required conditional use permit, and, second, the required business license are described in the discussion.
Discussion

Standing

The record is unclear whether defendants’ employer, “Library One,” the owner of the adult bookstore and adult movie arcade, recently applied for a conditional use permit and license. We assume that defendants do have standing to challenge the permit and licensing procedures. (See Burton v. Municipal Court (1968) 68 Cal.2d 684, 688 [68 Cal.Rptr. 721, 441 P.2d 281].)

Vagueness of Standards

Defendants contend that the standards for issuing a permit and license are unconstitutionally vague.[3] The contention is without merit.
Local governments are entitled to regulate the location of bookstores and motion picture theaters which deal with adult material. (Young v. American *Supp. 7 Mini Theatres (1976) 427 U.S. 50, 62-63 [49 L.Ed.2d 310, 321, 96 S.Ct. 2440]. See also, City of Renton v. Playtime Theatres, Inc. (1986) 475 U.S. 41 [89 L.Ed.2d 29, 106 S.Ct. 925].) Burton v. Municipal Court, supra, 68 Cal.2d 684, 689, relied on by defendants and discussed below, recognized that although motion pictures were protected by the First and Fourteenth Amendments, a “municipality may impose reasonable regulations upon the conduct of an economic enterprise [citation] including the business of operating a motion picture theatre. [Citation.]”
In Young v. American Mini Theatres, supra, 427 U.S. 50, the Supreme Court held valid the classification of a theater as “adult” and the restriction of “adult” theaters to areas not less than 1000 feet apart and not less than 500 feet from a residential area. Defendants have no quarrel with those portions of the Los Angeles County Code which restrict defendants’— admittedly—adult bookstore and movie arcade consistent with the ordinances involved in Young. They contend, however, that the language used in the Los Angeles County Ordinances provides no objective standards.
We are obliged to construe enactments to give specific content to terms that might otherwise be unconstitutionally vague; an enactment should not be held void for uncertainty if any reasonable and practical construction can be given the enactment. (Pryor v. Municipal Court (1979) 25 Cal.3d 238, 253 [158 Cal.Rptr. 330, 599 P.2d 636].) Burton v. Municipal Court, supra, 68 Cal.2d 684, 692, states that the issue is whether the ordinances provide “precise standards capable of objective measurement. ...” Although the bulk of the standards involved cannot be numerically quantified, we conclude that an objective but unquantified standard is not unconstitutionally vague.
In examining the language which creates the standard, the question is whether the ordinance “clearly and precisely delineates its reach in words of common understanding.” (Cameron v. Johnson (1968) 390 U.S. 611, 616 [20 L.Ed.2d 182, 187, 88 S.Ct. 1335].) An ordinance is not vague or subjective if the drafters have chosen “widely used and well understood” words. (Kash Enterprises, Inc. v. City of Los Angeles (1977) 19 Cal.3d 294, 304 [138 Cal.Rptr. 53, 562 P.2d 1302].)
Defendants isolate three required findings under section 22.56.190: The requested use “will not adversely affect” a place of religious worship, school, park, playground or similar use within a 500-foot radius; the requested use must be “sufficiently buffered” in relation to residentially zoned areas “so as not to adversely affect” those areas, and the exterior appearance “will not be inconsistent with the external appearance of commercial struc *Supp. 8 tures” within the area “so as to cause blight, deterioration, or substantially diminish or impair property values within the neighborhood.”
Our Supreme Court analyzed comparable language in Kash Enterprises, Inc. v. City of Los Angeles, supra, 19 Cal. 3d 294, in ruling on the constitutionality of ordinances regulating newsracks. The court concluded that phrases such as, “unreasonably interferes with or impedes” (19 Cal.3d at p. 303), and “clean,” “neat” and “in good repair” (id., at p. 305) involved common and widely used words, and were sufficiently precise to be constitutional.
Applying the Kash method of analysis to this case, we construe the requirement that a use “not adversely affect” another use to mean that the adult bookstore and arcade will not interfere with other uses; that sounds from the bookstore cannot be heard from other uses; that the bookstore will not be conspicuously visible from the other uses, and that the bookstore is located so that customers are not likely to inadvertently wander on the property of other uses.
The phrase, “will not be inconsistent with the external appearance of commercial structures” also in the area, is also sufficiently clear. It means that the external design and decor of the adult bookstore and movie arcade will not be conspicuous in relation to other commercial uses; and that the exterior lighting and signs are similar to the exterior lighting and signs of other commercial establishments in the area.
Concededly, the phrase “so as to cause blight, deterioration or substantially diminish or impair property value within the neighborhood,” may lack precision, but we construe this phrase simply to restate the standard that the exterior appearance “will not be inconsistent” with the exterior appearance of other commercial establishments, and thus avoid impermissible vagueness. (See Kash Enterprises, Inc. v. City of Los Angeles, supra, 19 Cal.3d 294, 305.)
The cases relied on by defendants involve ordinances in which the courts found the standards to be subjective, imprecise, and conferring on the authorities excessive discretion.
In Burton v. Municipal Court, supra, 68 Cal.2d 684, the defendants were charged with exhibiting motion picture films to the public without a written permit from the Board of Police Commissioners. The applicable ordinances provided that the board “may deny” a permit if after an investigation the board found that the “operation will not comport with the peace, health, safety, convenience, good morals, and general welfare of the public.” The *Supp. 9 ordinances also provided that the board “shall not issue a permit for a business which has been or is a public nuisance,” or if the applicant is “unfit to be trusted with the privileges granted by such permit, or has a bad moral character, intemperate habits or a bad reputation for truth, honesty, or integrity.” (68 Cal.2d at p. 687.)
In Ebel v. City of Garden Grove (1981) 120 Cal.App.3d 399 [176 Cal.Rptr. 312], the local ordinances governing the operation of an adult book store or movie theater included a requirement that the applicant obtain a conditional use permit. The stated purpose in deciding whether to issue a conditional use permit was to “ ‘assure that the degree of compatibility made the purpose of this Chapter shall be maintained with respect to the particular use on the particular site and in consideration of other existing and potential uses and improvements within the general area in which such is proposed to be located,’” and “‘to recognize and compensate for variations and degree of technological processes and equipment as related to the factors of noise, smoke, dust, fumes, vibration, odors, and hazard or public need.’” (120 Cal.App.3d at pp. 405-406.)
In City of Imperial Beach v. Escott (1981) 115 Cal.App.3d 134 [171 Cal.Rptr. 197], the local ordinances regulating adult bookstores and movie theaters also required that the applicant obtain a conditional use permit. The ordinance provided that “the Planning Commission may, by resolution, grant a conditional use permit,” if the commission found that the proposed use “is necessary or desirable to provide a service or facility which will contribute to the general well-being of the neighborhood or community”; that the use would not “be detrimental to the health, safety, or general welfare of persons residing or working in the vicinity, or injurious to property or improvements in the vicinity”; that the proposed use would comply with the “regulations and conditions” and that the granting of the conditional use would be “in harmony with the purpose and intent of this title and the general plan of the city.” (115 Cal.App.3d, at pp. 137-138.)
There is, however, no comparison between the Los Angeles County Code standards, which govern exclusively the physical appearance and relationship of the adult book store and adult movie arcade to other uses, and the moralistic litany in Burton v. Municipal Court, supra, 68 Cal.2d 684, or the rambling statements of purpose in Ebel v. City of Garden Grove, supra, 120 Cal.App.3d 399 and City of Imperial Beach v. Escott, supra, 115 Cal.App.3d 134, all of which, in addition, conferred on the issuing authority unlimited discretion to deny a permit or license.
In brief, the Los Angeles County zoning requirements for an adult bookstore or adult movie theater or arcade are not unconstitutionally vague.

*Supp. 10
Procedural safeguards

Defendants contend that even if the substance of the ordinances passes constitutional scrutiny, the procedures involved in obtaining a conditional use permit and license constitute an impermissible prior restraint. We do not agree that the procedures are unconstitutional.
An operator must, as noted, apply for and obtain, first, a conditional use permit, and second, a business license. The procedures in the Los Angeles County Code are as follows: Conditional use permit (§ 22.28.210). A public hearing must be held. (§ 22.56.070.) No time limit is specified within which to hold the hearing after filing. (§ 22.56.1570.) The hearing may be held by either the zoning board or the business license commission. (§ 22.56.1590.) If the zoning board holds the initial hearing, that board must submit recommendations to the commission within 90 days after the hearing. (§ 22.56.1610.) The commission may approve the findings of the zoning board, refer the matter back to the board for further hearing or set the matter for a de novo public hearing before itself. (§ 22.56.1620.) No time limit is specified for a de novo hearing, or for the issuance of a decision after the hearing. (See § 22.56.1620, subd. A4.) A recommendation of the zoning board becomes final if the commission takes no action within 30 days. (§ 22.56.1630.)
A dissatisfied applicant for a conditional use permit may appeal to the board of supervisors. (§ 22.60.200.) The board of supervisors may affirm the decision of the commission, refer the matter back for further proceedings or set the matter for a de novo hearing. (§ 22.60.270.) No time limit is specified for action by the board of supervisors.
Business license. Before an applicant can obtain a business license, a public hearing must be held. (§ 7.06.040.) The commission may submit the matter to a referee to take testimony and report his findings. (§ 7.10.020.) The referee is required within three days after the hearing to submit a written report to the commission. (§ 7.10.320.) The applicant is entitled to have the matter heard by the full commission. (§ 7.10.070.) In that case, the hearing must be held at the commission’s next regular meeting. (§ 7.10.080.) No time limit is specified for holding the next regular meeting.
Defendants contend, relying on Freedman v. Maryland (1965) 380 U.S. 51 [13 L.Ed.2d 649, 85 S.Ct. 734], that the applicable ordinances lack constitutionally required procedural safeguards. The People contend that Freedman does not apply.
*Supp. 11 Freedman involved a censorship ordinance. The court held that a “noncriminal process which requires the prior submission of a film to a censor avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system. First, the burden of proving that the film is unprotected expression must rest on the censor.” Second, “the exhibitor must be assured, by statute or authoritative judicial construction, that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film.” (Id., at pp. 58-59 [13 L.Ed.2d at pp. 654-655].) The censorship scheme in Freedman applied to all films, regardless of content or classification.
The People rely on Bayside Enterprises, Inc. v. Carson (M.D.Fla. 1979) 470 F.Supp. 1140, which involved a local licensing code regulating adult entertainment. The operators, relying on Freedman, argued that the administrative procedure for judicial review of license denials or revocations was constitutionally defective in that the burden was on the applicant to seek review of an adverse administrative decision and the procedure contained inadequate “guaranties of promptness and finality.” The District Court disagreed that Freedman applied: “Freedman and its progeny deal with the procedures of expedited judicial review, with the burden on the censor, that must accompany governmental restraint upon the dissemination of a particular publication. . . . Under the Code ... in this case—a licensee’s alleged distribution of obscene materials will not furnish grounds for revoking his license, or for denying him a license to begin with. The only permissible grounds for that action would be violations in such areas as sanitation, dangerous physical conditions, or the like. In other words, official action on a license application or an existing license would flow from a failure to observe minimum standards of health and safety, and the violator would be subject to official sanction just like any other business. Under these conditions, the Freedman cases are simply inapposite.” (470 F.Supp. at p. 1149.)
We agree that the procedures approved in Freedman do not apply to the licensing under a zoning ordinance of a theater or bookstore. Constitutional issues aside, the simple determination by a censoring body whether a film is obscene cannot be equated with the many factors involved in determining whether a theater or bookstore complies with specified standards of health and safety. More important, the purpose of the licensing and permit procedures is not to censor the material to be exhibited or sold, but to assure that the proposed use complies with all requirements. The burden is on the applicant to present the necessary proofs that the proposed operation does comply with all lawful requirements.
Second, although any interference with the exhibition or sale of protected material can be viewed as “prior restraint,” Young v. American *Supp. 12 Mini Theatres, supra, 427 U.S. 50, recognized that a prior restraint on the exhibition of a film was not equivalent to a restriction through zoning on the theater which exhibits the films. In rejecting the contention that the zoning ordinances involved in Young were invalid as prior restraints on free speech, the Supreme Court noted that the “ordinances are not challenged on the ground that they impose a limit on the total number of theatres which may operate in the city of Detroit,” that there was “no claim that distributors or exhibitors of adult films are denied access to the market, or, conversely, that the viewing public is unable to satisfy its appetite for sexually explicit fare,” and that “the market for this commodity is essentially unrestrained.” (427 U.S. at p. 62 [49 L.Ed.2d at p. 321].)
More recently, City of Renton v. Playtime Theatres, Inc., supra, 475 U.S. 41, — [89 L.Ed.2d 29, 42] which relied on and approved Young, made clear that mere economic costs in finding a lawful location do not constitute an unconstitutional infringement on the dissemination of protected material. Thus, the fact that the permit and licensing procedures may be lengthy, may inconvenience the operators of adult theaters and bookstores, and may increase the business costs for such operations will not invalidate a licensing procedure that otherwise is not unfair.
Finally, Young recognized that erotic material was not entitled to the same quantum of protection as other protected material: “Moreover, even though we recognize that the First Amendment will not tolerate the total suppression of erotic materials that have some arguably artistic value, it is manifest that society’s interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate . . . Even though the First Amendment protects communication in this area from total suppression, we hold that the State may legitimately use the content of these materials as the basis for placing them in a different classification from other motion pictures. ” (427 U.S. at pp. 70-71 [49 L.Ed.2d at p. 326].)
Inevitably, Young leads to the conclusion that the procedures required by Freedman do not apply to the licensing under zoning laws of the adult bookstore and movie arcade involved in this case. Indeed even Burton v. Municipal Court, supra, 68 Cal.2d 684, otherwise relied on by defendants, in acknowledging the legitimacy of regulations “compelling the theatre building to satisfy health fire and safety laws, or requiring the operation of the business to comply with the law in other specific respects” (68 Cal.2d at p. 696), necessarily envisioned a procedure in which the burden would be on the exhibitor to show compliance with proper requirements.
Concededly, permit and licensing procedures can be used to effectively prevent an undesired but lawful operation from functioning. (See 414 *Supp. 13 Theatre Corp. v. Murphy (2d Cir. 1974) 499 F.2d 1155, 1159.) We recognize too that the Supreme Court still recognizes the protected position of “adult” material. In Vance v. Universal Amusement Co. (1980) 445 U.S. 308 [63 L.Ed.2d 413, 100 S.Ct. 1156], for example, the court held unconstitutional a Texas public nuisance statute used to shut down an adults-only motion picture theater based on a prior finding that the theater had shown obscene films. The court held that “the regulation of a communicative activity such as the exhibition of motion pictures must adhere to more narrowly drawn procedures than is necessary for the abatement of an ordinary nuisance ...” (445 U.S. at p. 315 [63 L.Ed.2d at p. 420].) Also, several federal courts of appeal cases have assumed that Freedman applied to some degree to the licensing of adult bookstores or theaters. (See Entertainment Concepts, Inc., III v. Maciejewski (7th Cir. 1980) 631 F.2d 497, 505-506; Bayou Landing, Ltd. v. Watts (5th Cir. 1977) 563 F.2d 1172, 1176; 414 Theatre Corp. v. Murphy, supra, 499 F.2d 1155, 1159.)
Although the LACC permit and licensing procedures lack time limits for all the necessary steps, in the absence of a specific time limit, a reasonable time will be inferred. (See, e.g., Stratton v. Tejani (1982) 139 Cal.App.3d 204, 211 [187 Cal.Rptr. 231].) Moreover, the code does contain some time limits (see § 22.56.1630 [30 days for commission to act on zoning board recommendation]; § 7.10.320 [referee to report to commission within three days]), which provide a basis for establishing time limits as to other steps.
More important, defendants have not provided this court with any meaningful record concerning delays in obtaining a permit and license. The reason that the owner of the arcade and bookstore does not have a permit and license is not clear. The burden is on the owner to initiate the necessary proceedings, and, on this limited record, we are not prepared to hold that the county will impermissibly delay, assuming the owner establishes his entitlement, in granting a permit and license.
The judgments are affirmed.
Cooperman, P. J., and Reese, J., concurred.

 All section references are to the Los Angeles County Code.

 Section 22.56.190, and, as relevant, section 22.56.090 read as follows: “22.56.190 Adult businesses—Additional findings prerequisite to permit. A. In addition to the findings required pursuant to subsections Al, A3 and A4 of Section 22.56.090, the zoning board shall recommend approval and the commission shall approve an application for a conditional use permit for an adult business where the information submitted by the applicant and/or presented at public hearing substantiates the following findings:
“1. The requested use at the proposed location will not adversely affect the use of a church, temple or other place used exclusively for religious worship, school, park, playground or similar use within a 500-foot radius; and
“2. The requested use at the proposed location is sufficiently buffered in relation to residentially zoned areas within the immediate vicinity so as not to adversely affect said areas; and
“3. The exterior appearance of the structure will not be inconsistent with the external appearance of commercial structures already constructed or under construction within the *Supp. 6 immediate neighborhood so as to cause blight, deterioration, or substantially diminish or impair property values within the neighborhood. (Ord. 82-0233 § 1, 1982; Ord. 82-0024 §§ 8 (part) and 9, 1982; Ord. 1494 Ch. 5 Art. 1 § 501.25, 1927.)”
“22.56.090 Application—Grant or denial—Findings and decision at public hearings. A. The zoning board shall recommend approval and the commission shall approve an application for a conditional use permit where the information submitted by the applicant and/or presented at public hearing substantiates the following findings:
“1. That the proposed use will not be in substantial conflict with the adopted general plan for the area. Where no general plan has been adopted, this subsection shall not apply;
“3. That the proposed site is adequate in size and shape to accommodate the yards, walls, fences, parking and loading facilities, landscaping and other development features prescribed in this title, or as is otherwise required in order to integrate said use with the uses in the surrounding area; and
“4. That the proposed site is adequately served:
“a. By highways or streets of sufficient width and improved as necessary to carry the kind and quantity of traffic such use would generate, and
“b. By other public or private service facilities as are required.
“(Ord. 82-0024 § 8 (part), 1982; Ord. 1494 Ch. 5 Art. 1 § 501.9, 1927.)”

 Defendants point out that the stipulated facts state that the license of Library One was revoked on the grounds that Library One was not in compliance with the zoning ordinance and that Library One had not been granted a conditional use permit “because the business was at that time within 1000 feet of a public park.” Assuming that defendants’ employer was in fact denied a conditional use permit solely on those grounds, no constitutional issues would be involved at all. The commission or board simply misread the ordinances under which conditional use permits are to be granted; section 22.56.190, subdivision Al, refers to a “500-foot radius.”