[No. B072488. Second Dist., Div. Seven. Apr. 29, 1994.]

T. M. SMITH, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

## COUNSEL

Joshua Kaplan for Plaintiff and Appellant.

De Witt W. Clinton, County Counsel, Charles J. Moore, Principal Deputy County Counsel, Richard W. Weiss, Deputy County Counsel, Hill, Farrer & Burrill, Darlene Fischer Phillips and Dean E. Dennis for Defendants and Respondents.

## OPINION

**JOHNSON, J.**—For a second time, appellant seeks a conditional use permit (CUP) for a nude dancing cabaret. The application is for the same location the cabaret formerly occupied in an unincorporated area of the county near the cities of Azusa and West Covina. In a published opinion filed in 1989, this court affirmed a denial of appellant's prior CUP application for this property (*Smith* v. *County of Los Angeles* (1989) 211 Cal.App.3d 188 [259 Cal.Rptr. 231]). This time, however, appellant raises a new issue, the constitutionality of the Los Angeles County ordinance under which he was denied a CUP. Because we conclude this ordinance contains criteria which are so vague they constitute an unconstitutional prior restraint, we reverse and do not reach the other issues raised in this appeal.

### FACTS AND PROCEEDINGS BELOW

Since this appeal is decided on the basis of the constitutionality of an ordinance, we need not dwell on the specific facts of this application and the

county's processing of that application. Moreover, most of the details regarding the property and the neighborhood can be found in our prior opinion, *Smith v. County of Los Angeles, supra,* 211 Cal.App.3d 188. Consequently, we will only sketch enough of the basics here to supply some background for discussion of the constitutional issue.

For a half-dozen years, appellant has sought to reopen a nude dancing club which formerly operated on this property in an unincorporated area of the county. After the county denied his first application and this court rejected his appeal, appellant took advantage of a provision allowing him to reapply for a CUP after two years had elapsed. The county considered this new application under an ordinance which applies only to adult entertainment businesses, Los Angeles County Code (hereinafter County Code) section 22.56.190. The ordinance requires that the operation of the adult business at the requested location will not "adversely affect the use" of schools, parks, playgrounds, places of worship, or similar uses within a 500-foot radius. The adult business likewise must be "sufficiently buffered" from "residentially zoned areas within the immediate vicinity so as not to adversely affect" those areas. Furthermore, its exterior appearance cannot be "inconsistent" with commercial structures within the immediate neighborhood.[1]

After a hearing, the county denied the renewed application based on findings the nude dancing cabaret was not "sufficiently buffered" from a mobilehome park 190 feet away or from an area of single-family residences 400 feet away, and that the building's exterior appearance was not consistent with commercial structures in the immediate neighborhood, especially a newly constructed shopping center across the highway.

Appellant sought mandamus relief from the trial court and was denied. He appealed primarily on grounds the evidence did not support the county's findings of inadequate buffering and incompatible exterior appearance.

## DISCUSSION

I. *To Avoid Being an Unconstitutional Prior Restraint on Expression, a CUP Process for Adult Businesses Must Apply Standards Which Are "Narrow, Objective, and Definite."*

In appellant's reply brief, he for the first time challenged the constitutionality of Los Angeles County's provisions governing the granting of CUP's to

---

[1]The full text of the relevant portions of this ordinance is set forth at pages 1001-1002, *post.*

adult entertainment businesses. This challenge is based on a published United States District Court opinion filed during the pendency of this appeal. (*Dease* v. *City of Anaheim* (C.D.Cal. 1993) 826 F.Supp. 336.) In this decision, Judge Gadbois struck down a nearly identical adult business ordinance in neighboring Orange County on grounds the language of the ordinance lacked "narrow, objective and definite standards" and thus represented an unconstitutional prior restraint.

■ Judge Gadbois's decision is considered final, even were it now on appeal, but obviously is not binding on this court.[2] The question is whether the opinion is persuasive in its application of "unconstitutional vagueness" principles to the relevant criteria found both in the City of Anaheim and Los Angeles County ordinances.

The *Dease* decision arose out of a facial challenge to the Anaheim ordinance. It was filed by Sandra Dease, a saloon operator who wanted to feature "wet T-shirt contests" and "whipped cream wrestling contests." By doing so her saloon would become an adult business, requiring issuance of a CUP. Rather than applying for a CUP, Ms. Dease filed a facial challenge and an "as applied" challenge to the ordinance, both based essentially on First Amendment grounds.

At the time Ms. Dease filed her lawsuit the Anaheim ordinance automatically denied a CUP to any adult business which sought to locate within 400 feet of a lot zoned for residential use or within 1,000 feet of another adult business or of a church or school.[3]

Beyond that, the proposed business could not "(1) 'adversely affect the adjoining land uses and the growth and development of the area' (subsection .032); (2) be detrimental to the 'peace, health, safety, and general welfare' of

---

[2]Under federal law a trial court judgment is final and not suspended while on appeal. (1B Moore's Federal Practice (2d ed. 1993) ¶ 0.416[3.-2], p. III-322.) "[A] federal judgment must be given full faith and credit in the state courts." (*Id.* at ¶ 0.406[1], p. III-94.) Nonetheless, ". . . the decisions of the courts of appeals in the circuit embracing the state, or those of the United States district courts sitting within the state do not govern under the doctrine of stare decisis." (*Id.* at ¶ 0.402[1], p. I-21.)

[3]The provisions of the Anaheim ordinance establishing specific, objective distance rules for the location of adult businesses read as follows:

".020—[N]o conditional use permit shall be granted by the City of Anaheim for any such 'adult entertainment business' if the premises upon which such business is proposed to be located is:

"A. Within 400 feet of any lot zoned for residential use; or

"B. Within 1000 feet of any lot upon which there is located a church, or educational institution utilized by minors; or

"C. Within 1000 feet of any lot upon which there is located any other Adult Entertainment Business as defined in Section 18.89.020 of this chapter."

the area (subsection .033); (3) create an undue burden by generating excess traffic (subsection .034); or (4) 'be detrimental to the peace, health, safety, and general welfare of the citizens of the City of Anaheim' (subsection .035)." (*Dease* v. *City of Anaheim, supra,* 826 F.Supp. 336, 339.)

During the course of the litigation, Anaheim amended the CUP ordinance governing adult businesses. The amendment stated ". . . a court action has been brought against the City alleging constitutional invalidity of portions of [the ordinance] as applied to [adult entertainment businesses]. . . ." (826 F.Supp. at p. 339.) The amendment added language closely paralleling the Los Angeles County ordinance at issue in this case.

"[A] conditional use permit *shall* be granted by the City Council or Planning Commission . . . for any use which consists essentially of dissemination of information or other *speech or expression protected by the First Amendment* to the United States Constitution, *unless* the information submitted by the applicant and/or presented at the public hearing substantiates one or more of the following findings:

". . . that the requested use at the proposed location will adversely affect the use of a church, temple, or other place used exclusively for religious worship, school, park, or playground . . .' or

". . . that the requested use . . . is insufficiently buffered in relation to residentially zoned areas within the immediate vicinity . . . ;

". . . that the exterior appearance of the structure will be inconsistent with the external appearance of commercial structures already constructed or under construction . . . so as to cause blight or deterioration, or substantially to diminish or impair property values within the neighborhood;

". . . that any one or more of the requirements of subsections .031 through .034 of this Section are not met." (Anaheim Mun. Code, § 18.03.030, as amended by Ord. No. 5346, quoted in *Dease* v. *City of Anaheim, supra,* 826 F.Supp. 336, 340, italics in original.)

■ Judge Gadbois conceded nude or possibly even semi-nude entertainment was entitled to a lesser level of constitutional protection under the First Amendment than speech and many other forms of expression.[4] Nonetheless, he found ". . . nude dancing is not without its First Amendment protections

---

[4]See, e.g., *Doran* v. *Salem Inn, Inc.* (1975) 422 U.S. 922 [45 L.Ed.2d 648, 95 S.Ct. 2561] (unconstitutional to prohibit topless waitresses and entertainers); *Barnes* v. *Glen Theatre, Inc.* (1991) 501 U.S. 560 [115 L.Ed.2d 504, 111 S.Ct. 2456] (plurality opinion in which Chief

from official regulation." (826 F.Supp. at p. 341.) "Because nude/semi-nude dance is a form of expression protected by the First Amendment, the government cannot regulate the speech element of this activity on the basis of its *content*." (*Ibid.*)

■ "In determining the constitutionality of the Anaheim CUP ordinance, the court must . . . deal with the issue of prior restraints. . . . The Anaheim permit scheme qualifies as a prior restraint, because it essentially requires the permittee to obtain the government's permission or approval before engaging in an act of speech. The key issue in this case is whether the Anaheim CUP ordinance constitutes a '*content-neutral* time, place, and manner restriction aimed at secondary effects arising out of the sexually oriented businesses,' or whether it is more properly characterized as an unconstitutional prior restraint on free speech." (826 F.Supp. at p. 342, citing *FW/PBS, Inc.* v. *City of Dallas* (1990) 493 U.S. 215, 223 [107 L.Ed.2d 603, 616, 110 S.Ct. 596].)

■ The Supreme Court has repeatedly held that an ordinance " ' "which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms." ' " (*FW/PBS, Inc.* v. *City of Dallas, supra,* 493 U.S. at p. 226 [107 L.Ed.2d at p. 618], citing *Shuttlesworth* v. *City of Birmingham* (1969) 394 U.S. 147, 151 (22 L.Ed.2d 162, 167, 89 S.Ct. 935).) Addressing the constitutionality of a parade permit requirement, *Shuttlesworth* held "that a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." (394 U.S. at pp. 150-151 [22 L.Ed.2d at p. 167]; see also *Forsythe County, Ga.* v. *Nationalist Movement* (1992) __ U.S. __ [120 L.Ed.2d 101, 112 S.Ct. 2395] [regulating fee for parade permits]; *Freedman* v. *Maryland* (1965) 380 U.S. 51 [13 L.Ed.2d 649, 85 S.Ct. 734] [censorship of motion pictures].)

Judge Gadbois examined the Anaheim CUP ordinance in the light of the constitutional requirement of "narrow, objective, and definite" standards and found it wanting. "The Anaheim CUP ordinance vests the Planning Commission with the power to decide who may or may not obtain a CUP. Because the Commission's decision-making is not guided by definite and objective standards, the CUP ordinance infringes the First Amendment rights

---

Justice Rehnquist states "[N]ude dancing . . . is expressive conduct within the outer perimeters of the First Amendment, . . ."); *Morris* v. *Municipal Court* (1982) 32 Cal.3d 553 [186 Cal.Rptr. 494, 652 P.2d 51] (First Amendment vitiates laws banning nude dancing).

of the permittee. The Commission's ability to make decisions based on ambiguous criteria such as the 'general welfare' of the community effectively gives the Commission the power to make decisions on any basis at all, including an impermissible basis, such as content-based regulation of speech. Judging the ordinance as it is now written, this court cannot conclude that the Anaheim ordinance 'serves a substantial government interest *unrelated to the suppression of freedom of expression.*' *BSA, Inc.* [v. *King County* (9th Cir. 1986)] 804 F.2d [1104,] 1107 (emphasis added) . . . ." (*Dease* v. *City of Anaheim, supra,* 826 F.Supp. at p. 344.)

Judge Gadbois then turned to the specific language in the Anaheim adult business ordinance which echoes the major provisions of the Los Angeles County ordinance. "The ambiguity of this subsection also gives the Planning Commission an unconstitutional amount of discretion in deciding whether to grant or deny the CUP, leaving open the possibility of content-based discrimination. The Planning Commission may refuse to issue a CUP, based on vaguely-worded criteria such as the following: (1) no First Amendment activity may occur in an area that may 'adversely affect' a school or church, or (2) no First Amendment activity may take place in an area that is 'insufficiently buffered' in relation to a residential zone." (826 F. Supp. at p. 344.)

 Judge Gadbois then concluded, "The Constitution permits the City of Anaheim to protect its communities from the secondary effects associated with adult entertainment businesses, . . . The City may also use zoning as a means to accomplish this end. However, the Constitution does not allow the City to regulate these types of businesses on the basis of the content of their speech—i.e., the City cannot deny a CUP application for an establishment exhibiting nude dancing on the grounds that the City finds nude dancing offensive or of little value.

"When a zoning ordinance requires the issuance of a license or a permit before the applicant can engage in an act of speech, the licensing authority must be guided by objective and definite standards. Otherwise the possibility of content-based censorship is inherent in the statute. Because the Anaheim CUP ordinance does not adequately control the licensor's discretion, it violates the First Amendment to the United States Constitution." (826 F.Supp. at p. 345.) On this basis, Judge Gadbois ruled, "[b]ecause the unconstitutional aspects of the Anaheim CUP ordinance are inherent in the scheme itself, they cannot be severed. Therefore, all references to the Anaheim CUP licensing requirement must be stricken from the Anaheim Municipal Code." (*Ibid.*)

As mentioned earlier we are not bound by Judge Gadbois's decision in *Dease* v. *City of Anaheim.* Nonetheless, we find its reasoning persuasive. We

agree with the standards the opinion articulates for judging the constitutionality of using CUP's to regulate the location of adult entertainment businesses. We likewise agree with Judge Gadbois's conclusion the language of the Anaheim ordinance lacks the "narrow, objective, and definite standards to guide the licensing authority" prior United States Supreme Court opinions require.

II. *Some of the Standards Applied in Awarding CUP's to Adult Businesses Under the Los Angeles Zoning Code Are Not Constitutionally Narrow, Objective, and Definite.*

■ The remaining question is whether the CUP standards the County of Los Angeles applies to adult entertainment businesses suffer from the same constitutional infirmity as do Anaheim's. The answer to that question is as obvious as the near identity of the relevant sections of the Los Angeles County and the Anaheim ordinances. If Anaheim did not copy this language from the Los Angeles County ordinance, it might as well have. This close similarity is best observed by placing the critical provisions side by side.

ANAHEIM ORDINANCE

".037—[A] conditional use permit shall be granted by the City Council or Planning Commission for any use which consists essentially of dissemination of information or other speech or expression protected by the First Amendment to the United States Constitution, unless the information submitted by the applicant and/or presented at the public hearing substantiates one or more of the following findings:

".03701—that the requested use at the proposed location will adversely affect the use of a church, temple, or other place used exclusively for religious worship, school, park, or playground . . . ; or

LOS ANGELES COUNTY ORDINANCE

"A. In addition to the findings required pursuant to subsection A1, A3 and A4 Section 22.56.090, the hearing officer shall approve and the commission shall approve an application for a conditional use permit for an adult business where the information submitted by the applicant and/or presented at public hearing substantiates the following findings:

"1. The requested use at the proposed location will not adversely affect the use of a church, temple or other place used exclusively for religious worship, school, park, playground or similar use within a 500-foot radius; and

".03702—that the requested use . . . is insufficiently buffered in relation to residentially zoned areas within the immediate vicinity . . . ; or

"2. The requested use at the proposed location is sufficiently buffered in relation to residentially zoned areas within the immediate vicinity so as not to adversely affect said areas; and

".03703—that the exterior appearance of the structure will be inconsistent with the external appearance of commercial structures already constructed or under construction . . . so as to cause blight or deterioration, or substantially to diminish or impair property values within the neighborhood;

"3. The exterior appearance of the structure will not be inconsistent with the external appearance of commercial structures already constructed or under construction within the immediate neighborhood so as to cause blight, deterioration, or substantially diminish or impair property values within the neigborhood." (County Code, § 22.56.190.)

".03704—that any one or more of the requirements of subsections .031 through .034 of this Section [requiring the adult business not adversely affect growth and development, be detrimental to the peace, health, safety, and general welfare of the area or create excess traffic] are not met." (Anaheim Mun. Code, as amended by Ord. No. 5346.)

As either a cursory or close comparison of sections .03701-.03703 of the Anaheim CUP ordinance with subdivisions A.1.-A.3. of the County Code reveals, the operative language of the two ordinances is identical. Both ordinances use the vague terms "will *adversely affect* the use" of a church, school, etc., and "is *insufficiently buffered* in relation to residentially zoned areas." This is the very language Judge Gadbois found constitutionally infirm in *Dease.* If the Anaheim ordinance lacks the requisite "narrow, objective and definite" standards—and we agree with the *Dease* decision that it lacks those standards—so does the Los Angeles County ordinance.

Los Angeles County argues its ordinance is different enough from the Anaheim ordinance that it satisfies the constitutional standard explained in *Dease*. The county points out the Anaheim ordinance contains another vague provision, one not found in the Los Angeles ordinance. It allows officials to deny a CUP if they deem an adult business would be detrimental to the peace, health, safety, and general welfare of the area in which it is to be located. However, the fact the Anaheim ordinance contains more language which is unconstitutionally vague than does the Los Angeles ordinance cannot save the Los Angeles ordinance. As we have seen, the *Dease* court found the language the two ordinances share also is constitutionally defective, a holding with which we agree. The fact the Anaheim ordinance contains some additional language which likewise is constitutionally infirm in no sense cures the shared language of its constitutional problems.

III. *This Court Cannot Construe the Los Angeles County Adult Business Ordinance to Eliminate Its Unconstitutional Vagueness Without Completely Rewriting Its Language and Thus Defer That Task to the County Board of Supervisors.*

We do feel compelled, however, to go beyond Judge Gadbois's decision and explain in which ways we find the subsections of County Code section 22.56.190 to be unconstitutionally vague and, furthermore, to explain why we have found it unwise to attempt to construe this ordinance into constitutionality. We also emphasize that while we reach the same result as the *Dease* opinion our rationale does not rely on Judge Gadbois's opinion as precedent in any sense but is based on an independent analysis of the law and the requirements of the First Amendment. No matter what may happen with *Dease* on appeal in the federal courts, our own review of the law convinces us the current Los Angeles adult business CUP ordinance is so vague it constitutes a prior restraint. At the same time, we are equally convinced Los Angeles County government can amend its laws to constitutionally employ land-use regulation as a means of determining the appropriate location of adult businesses in this county.

A review of appellate cases suggests local governments have adopted one of two fundamental approaches in setting standards for determining where adult businesses may locate within their boundaries. In the first approach, the one found in most cases which have upheld land-use regulation of adult businesses, the local legislative body itself weighs the various subjective factors bearing on the suitable location of adult businesses. After making its own judgment on these subjective factors, the legislative body then promulgates precise, quantifiable standards which the agency charged with deciding individual cases (typically a planning commission or zoning board) is expected to apply.

The most common situation in decided cases: on the basis of its own determination of which impacts are sufficiently adverse to warrant exclusion of an adult business, the legislative body requires the zoning board or its equivalent to deny permits for any adult businesses which propose to locate within a certain distance of certain defined types of properties, e.g., within 500 feet of a church, school, another adult business, etc. Thus, the legislative body only confers a very limited discretion on the planning commission, zoning board or other administrative body—to measure the distance between the proposed adult business and any of the defined types of properties which may exist in the area. If the proposed adult business is more than the prescribed distance from all of the defined properties, it must be approved. If it is less than the prescribed distance from one of the defined properties, it must be denied. This approach, of course, ensures the adult business CUP standard satisfies the constitutional requirement it be "narrow, objective, and definite."

The other fundamental approach, the one Los Angeles County chose to follow in its adult business CUP process, has not been reviewed very often in appellate decisions. In this approach, the legislative body itself only makes some of the subjective judgments, instead establishing rather general criteria and delegating to an administrative body the discretion to make subjective judgments whether the impacts of approving the adult business at the proposed location are adverse and whether they are adverse enough to deny the application.

■ Judge Gadbois's decision appears to suggest the second approach is inherently unconstitutional because it fails the "narrow, objective, and definite" test. If this is a fair reading of the *Dease* opinion, we are unwilling to go that far. In other First Amendment contexts the courts have approved delegations of *some* degree of subjective discretion to officials. (See, e.g., *Grayned* v. *City of Rockford* (1972) 408 U.S. 104 [33 L.Ed.2d 222, 92 S.Ct. 2294] [ordinance prohibiting noise or diversion adjacent to school which disturbs peace and good order of that school is not unconstitutionally vague]; *Cameron* v. *Johnson* (1968) 390 U.S. 611 [20 L.Ed.2d 182, 88 S.Ct. 1335] [statute prohibiting picketing which obstructs or unreasonably interferes with free ingress or egress to and from a courthouse or public building not unconstitutionally vague].)

In delegating such authority, however, the local legislative body must provide criteria which are sufficiently precise to meet the constitutional requirement they be "narrow, objective, and definite." In our view, a legislative standard which purports to allow administrative agencies or individual officials discretion to deny or grant CUP's to adult businesses on a subjective, case-by-case basis should have at least three dimensions. Lack

of precision in defining any of the three can cause the standard to be unconstitutional.

The first of these dimensions concerns *which properties* the adult business must detrimentally affect to warrant exclusion. (This dimension usually is defined by type, e.g., schools, churches, etc., and by proximity to the proposed adult business.) The second dimension is the *kind* of detrimental impacts an adult business imposes on those properties which are deemed grounds for banning an adult business from the proposed location. (To be constitutional these impacts must be "secondary" effects of the adult business, e.g., traffic, crime, etc., not objections to the content of the expressive activity taking place at the adult business.) The third dimension of the standard is the *degree* of detrimental impact required to deny the adult business a permit for the proposed location. (If increased traffic were the detrimental impact, for instance, 10 additional trips a day might not be sufficient to deny a CUP while a 100 would be.) The legislative body need not express the required degree of detrimental impact in quantitative terms, of course, but the standard should convey a sense the impact must be substantial.

 Both the criteria the regional planning commission applied to deny appellant a CUP here fail to provide adequate guidance along one or more of these dimensions.

 One of these standards requires disapproval of an adult business unless the commission finds it "is sufficiently buffered in relation to residentially zoned areas within the immediate vicinity so as not to adversely affect said areas." There are problems with every dimension of this particular standard. To begin with, the standard fails to even mention the kinds of impact which are considered both adverse and appropriate for the commission to use in reaching its decision a buffer is insufficient to prevent. Merely to illustrate one of many possible constitutionally *inappropriate* yet "adverse" impacts, consider a neighborhood resident's psychological discomfort (or perhaps even religious revulsion) with the notion people were dancing nude inside a nearby building. (This record contains statements by residents of the neighborhood whose objections were of this general nature.)

Second, the standard fails to define or provide any meaningful guidance as to the *degree* of adverse effects which justifies denial of a CUP. Consistent with the present standard, the commission could reject an application for an adult business despite the fact all but a single inconsequential adverse effect were buffered from surrounding residents.

Third, this standard is even unnecessarily vague—or perhaps misleading —in defining the types of properties the commission is expected to "sufficiently buffer" from these undefined "adverse" effects. It describes these

properties as "residentially zoned" not as properties occupied by residences. "Residentially zoned" connotes a property—with or without a residence already constructed—which is within a true "residential zone," that is, one of the R-1, R-2, R-3, etc., zones. Yet based on this case it is apparent the regional planning commission construes this to mean *any* zone in which residences are *permitted*, including those where residences are only allowed pursuant to a CUP or other special permit. Indeed the residential units involved in this case were zoned for agricultural uses in one instance and for commercial uses in the other. The residences the proposed nude dancing club would "adversely affect" had been allowed as exceptions in areas which were "agriculturally zoned" or "commercially zoned," rather than being "residentially zoned."[5]

There would be no problem with a definition which referred to the protected properties as "existing residences or residentially zoned" and other localities have done just that. (See, e.g., *City of Renton* v. *Playtime Theatres, Inc.* (1986) 475 U.S. 41 [89 L.Ed.2d 29, 106 S.Ct. 925] [upholding requirement adult business be no closer than 1,000 feet from, inter alia, "any residential zone, single- or multiple-family dwelling"]; *Cook County* v. *Renaissance Arcade* (1988) 122 Ill.2d 123 [118 Ill.Dec. 618, 522 N.E.2d 73] [ordinance bans adult business within 500 feet of "a residential . . . area or structure"].) That way the definition would embrace residences actually in existence (no matter what the zoning) as well as empty lots which were within a true "residential zone."

The problem with the commission's interpretation of the present definition is that it goes too far. With a CUP or other special permission, a residence can be constructed within any, or nearly any, zone in the entire county. Thus, if "residentially zoned" means any zone in which a residence *might* be approved, then all, or nearly all land within Los Angeles County, no matter how it is or will be used, must be "sufficiently buffered" from any adult business no matter where that business is to be located, and even if no one resides on that particular land.

The definition of the properties to be buffered is equally vague in describing which "residentially zoned" land is included. Rather than specifying a quantifiable perimeter, such as 500 feet, or a relatively precise term like "adjacent," this provision requires sufficient buffering from all properties

[5]A residence situated in a commercial or agricultural zone is not considered to be in a "residential zone." (*Harris Books, Inc.* v. *Santa Fe* (1982) 98 N.M. 235 [647 P.2d 868, 869] ["The term ['residential area'] cannot refer to a residential zone since the 'nonconforming use residence' which supported the trial court's conclusion was actually located in a commercial zone."].)

"within the immediate vicinity" of the proposed site. "Immediate vicinity" is a vague term. It could mean only properties which are adjacent, that is, abutting the proposed adult business. Or, it could also include those directly across the street. But it also could mean every property on the same block or within the same 10-block neighborhood, etc. Consequently, it allows the administrative body too much discretion in defining the amount and type of "buffering" the applicant must do and for whose benefit. It also fails to give the applicant a standard he or she can hope to understand and meet.

The need for a more precise standard, one which is sufficiently "narrow, objective, and definite," was underscored during the deliberations of the regional planning commission in this case. According to the record, at the hearing one of the commissioners reluctantly concluded the evidence conclusively established appellant's entitlement to a CUP for the nude dancing club. This commissioner said, "I find myself in a position where I feel that we really do not have legal reasons to deny this case. . . . If I sit here and understand what is going on from a land use point of view, I have not heard any good reasons why we are going to find reasons to deny this case." The commissioner then launched into a tirade against adult businesses and advocated doing everything possible to eliminate them entirely from the county. "I would like to say . . . that certainly I do not believe that this establishment is the type of establishment that is needed in your community, or any other community for that matter, but we have a law in this country that we, the people, need to try to change. . . . I do not agree with this, and I would certainly sign a petition today for any citizen who would say, 'let's change that law that will permit this type of establishment in our communities.' " Another commissioner endorsed this position and reluctantly concluded, "I find there is very little evidence to support the opposition in denying this application." At this, the county counsel who advises the commission reassured these two commissioners and the other three they could construct findings which would allow them to deny the appellant's application.

If the county's legislators are to entrust an administrative body with a good part of the subjective decisionmaking involved in the placement of adult businesses in this county the Constitution requires the legislators to identify the impacts the administrative body can appropriately consider and provide some guidance as to how adverse and serious those impacts must be in order to justify that body's denial of a CUP. Otherwise decisions reached for constitutionally impermissible reasons can be justified with loose findings about negligible instances of questionably negative effects. Unless the administrative body's discretion is narrowed by specific, appropriate criteria, the inquiry becomes a search for *any* reason to deny the CUP for an adult

business rather than a dispassionate examination of the evidence and an objective weighing of the factors bearing on a correct decision. First Amendment activities, especially those of a controversial or politically unpopular nature, are not well shielded by standards as vague as those found in the Los Angeles County adult business ordinance. This is yet another reason the Constitution requires "narrow, objective, and definite" standards when First Amendment activities are at stake.

 The second standard which the regional planning commission found appellant's proposed location to fail requires "the exterior appearance of the structure . . . not be inconsistent with the external appearance of commercial structures already constructed or under construction within the immediate neighborhood so as to cause blight, deterioration, or substantially diminish or impair property values within the neighborhood."

This standard appears less vague than the others in the adult business ordinance. It defines the properties which may be impacted with some precision as "commercial structures already constructed or under construction." (However, it still retains the vague term, "within the immediate neighborhood" in defining the location of those commercial structures.) It further defines with some precision the detrimental impact the administrative agency is to appraise, an "exterior appearance . . . [which is] inconsistent with the exterior appearance of" those other commercial structures.

The appearance of objectivity is illusory, however. It is such a broad requirement it allows denial of a CUP for an adult business on grounds the structure it will occupy is "inconsistent" in some undefined way with some other commercial structures in the area *even though that same structure, with whatever deficiencies it may have, can be occupied for a different use.* To put it another way, as worded, this provision allows exclusion of an adult business use for reasons having nothing to do with the secondary effects of adult businesses. The exclusion of the adult business from the deficient structure does not eliminate the inconsistency, since it will remain when that structure is taken over for a use which does not have to satisfy this same special requirement. This represents unconstitutional discrimination based on the content of a First Amendment activity. (This would not be a problem, of course, if the section required the "inconsistency" to relate to exterior appearance considerations directly related to the "secondary effects" of adult businesses.)

 At oral argument, respondent county asked this court to "cure" this and other vague provisions we might discern in the adult business CUP ordinance by construing these provisions in ways to make them constitutionally "narrow, objective, and definite." This is the approach the appellate

department was persuaded to attempt in *People* v. *Nadeau* (1986) 182 Cal.App.3d Supp. 1 [227 Cal.Rptr. 644]. What happened in this case does not suggest this strategy worked or is workable given the many ambiguities and other defects in County Code section 22.56.190 Rather it demonstrates this ordinance needs to be completely rewritten, not "construed," into conformity with the Constitution.

In *People* v. *Nadeau, supra,* the appellate department attempted to deal with one of the problems discussed above—the overly broad requirement of structural consistency. The appellate department opinion apparently sought to narrow this provision to make it constitutional by limiting the consistency requirement to those attributes of exterior appearance related to the "secondary effects" of adult businesses. "The phrase, 'will not be inconsistent with the external appearance of commercial structures' also in the area, . . . means that the external design and decor of the adult book and movie arcade will *not be conspicuous* in relation to other commercial uses; and that the exterior lighting and signs are similar to the exterior lighting and signs of other commercial establishments in the area.

"Concededly, the phrase 'so as to cause blight, deterioration or substantially diminish or impair property value within the neighborhood,' may lack precision, but we construe this phrase simply to restate the standard that the exterior appearance 'will not be inconsistent' with the exterior appearance of other commercial establishments, and thus avoid impermissible vagueness. [Citation.]" (*People* v. *Nadeau, supra,* 182 Cal.App.3d Supp. 1, 8, italics added.)

As so defined, of course, most if not all potential "inconsistencies" would be curable through special conditions requiring the owner to conform exterior signs, window treatments and similar exterior features to adjoining commercial structures so that the owner's structure was not "conspicuous" as the home of an adult business.

The record in the regional planning commission proceedings in this case would provide little comfort to the appellate department and its effort to narrow this ordinance into a constitutional law. Despite what the *Nadeau* court wrote, the commission did not limit its consideration to exterior features unique to the "secondary effects" of adult businesses. To the contrary, the commissioners focused almost exclusively on exterior features which were unique to the structure itself, *no matter what use occupied that structure.* (Indeed the commissioners went beyond the structure the adult business proposed to occupy, which was in pretty good condition, and based their decision in part, at least, on the exterior appearance of two adjoining

commercial structures located on the same plot of land, which were then vacant and in a poor state of repair. They did so despite the fact neither of these structures was to be involved in any way in the operation of the adult business.)

The regional planning commission paid no heed to the fact the appellate department had narrowed the construction of this provision in an attempt to save its constitutionality. Instead the commissioners applied the words of the ordinance as written—vague and overbroad as they were. For this reason, we would be compelled to reverse this particular CUP denial even if we were persuaded the adult business CUP ordinance was salvageable. The fate of the *Nadeau* court's apparent attempt to restore a part of this ordinance to constitutionality convinces this court the language is so vague and the flaws so wide and deep it is beyond our province to cure. ██ ██ Courts are in the business of interpreting statutes and ordinances, not in rewriting them.[6]

Nor is it this court's role to reweigh the question whether First Amendment protections extend to adult businesses. Higher courts already have decided that issue in the affirmative. Instead it is our duty to enforce the constitutional protections which do exist and ensure land use regulations affecting adult entertainment use "narrow, objective, and definite" standards focussed on the secondary effects of these businesses. For the reasons explained above, the Los Angeles County ordinance fails this constitutional test.

DISPOSITION

The judgment is reversed and the cause remanded to the trial court with instructions to issue the peremptory writ of mandate.

Lillie, P. J., concurred.

**WOODS (Fred), J.,** Concurring.—I am persuaded by the reasoning contained in the opinion that the Los Angeles County CUP ordinance suffers

---

[6]Although the regional planning commission did not rely on the third standard set forth in County Code section 22.56.190, we conclude it also is unconstitutional. This one requires denial if an adult business "adversely affects" churches, schools and the like within 500 feet of its proposed location. There is no problem with its definition of the *type* of properties which might be affected. They are defined both by category of use and their proximity to the proposed adult business. But the standard fails to even mention the kinds of impact which are considered both adverse and appropriate for the commission to use in reaching its decision. Nor does the standard suggest the degree of detriment which justifies denial of a CUP. Thus, this standard, like the other two, fails to satisfy the requirement it be "narrow, objective, and definite."

from constitutional "vagueness," infirmities which are beyond our province to cure. By joining with my colleagues to reverse the judgment and remand to the trial court for issuance of a peremptory writ of mandate I would accentuate two points:

1. I am just as convinced as my colleagues that Los Angeles County government can amend its laws to constitutionally employ land-use regulation as a means of determining the appropriate location of adult businesses in the county; and

2. In doing so, the comment of Chief Justice Rehnquist in the plurality opinion in *Barnes* v. *Glen Theatre, Inc.* (1991) 501 U.S. 560 [115 L.Ed. 504, 511, 111 S.Ct. 2456], that, ". . . nude dancing . . . is expressive conduct within the outer perimeters of the First Amendment" be carefully weighed and considered.

Respondents' petition for review by the Supreme Court was denied July 21, 1994.