119 F.3d 8
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Renee VICARY and Angel's Nightclub, Inc., a California
corporation, dba Angel's Nightclub, Plaintiffs-Appellees,
v.
CITY OF CORONA, a municipal corporation, Defendant-Appellant.
 No. 96-55452.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 7, 1997
Filed July 18, 1997.
 
 Before CANBY and THOMAS, Circuit Judges, and KING,** District Judge.
 MEMORANDUM*
 The City of Corona in Riverside County, California, (the "City") appeals the district court's order permanently enjoining enforcement of the City's newly passed adult entertainment zoning ordinance against Renee Vicary and her topless nightclub. The ordinance requires adult entertainment businesses to be located in the City's heavy manufacturing ("M-3") zone and at least 750 feet away from a residentially zoned lot or a lot containing a school, church, library, park, neighborhood center or recreational facility. In granting the injunction, the court held that the ordinance was constitutional on its face but unconstitutional as applied. The district judge found certain physical barriers between Vicary's bar and its neighbors to be a reasonable alternative to the 750-foot setback requirement in the statute. This court has jurisdiction under 28 U.S.C. § 1292(a)(1), and remands for further factual findings consistent with this memorandum.
 BACKGROUND[1]
 In 1994, Renee Vicary decided to convert her sports bar/country western nightclub into a topless bar, and so advised the City of Corona.[2] It happens that, in 1995, the City decided to adopt Ordinance No. 2246 (the "Ordinance"), which further regulates the location of "live adult entertainment establishments" in the City. Under the Ordinance, such establishments must be: (1) located in Corona's heavy manufacturing, M-3, zone, rather than in general commercial zones as formerly required; and (2) at least 750 feet away from a residentially zoned lot, or a lot upon which a school, church, public park, public library, neighborhood center, or recreational facility is located. Corona Mun.Code § 17.41 (1995).
 Vicary's bar, Angel's Nightclub, is in fact already located in an M-3 zone, but is less than 750 feet away from two mobile home parks located in a residentially zoned lot. Angel's is on the south side of East Sixth Street. East Sixth Street itself is a well-traveled four-lane highway with an 80-foot wide dirt median that splits the four lanes into a pair of two lanes with traffic flowing in each direction.
 The Park Lane mobile home community is 250 feet to the northeast of Angel's, on the north side of East Sixth Street.[3] Trees and other thick vegetation such as bushes and low-growing trees line a surrounding perimeter wall of the Park Lane community, hiding most of the mobile home park from the view of those using East Sixth Street. The Corona La Linda mobile home park is approximately 650 feet southeast of Angel's and 400 feet from its property line on the south side of East Sixth Street. Corona La Linda is also enclosed by a perimeter wall. An industrial warehouse and storage yard for garbage trucks further separate the nightclub from Corona La Linda. Neither mobile home park is directly accessible from East Sixth Street. Both parks have their own internal street systems. They must be reached off of Temescal Street, which runs approximately 170 feet to the east of Angel's Nightclub and intersects with East Sixth Street. Developed and vacant industrial property lies to the south and west of Angel's. On the property directly north of Angel's, and across from East Sixth Street, is an office building.
 Corona contended that there were twenty-seven alternate M-3 zoned sites suitable for Angel's and consistent with the new Ordinance. The available sites were divided into four sections of the M-3 zoned properties in the city. Certain sections seem to have significant suitability problems. Section A is primarily occupied by three private businesses. The one remaining vacant lot in the northwest corner of the property of this section is barely accessible to any thoroughfare, but water and sewer lines run beneath it. Section B contains three vacant parcels owned by a trust, but all parcels require significant development since no off-site services are present on the property. Section C contains thirteen potential parcels, some vacant, three of which have access to water and sewer lines, three of which have access to water lines, and seven of which are landlocked. Section D apparently has ten suitable parcels. All but one has access to water and sewer lines and two of the ten are vacant.
 PROCEDURAL HISTORY
 Vicary initially sought a temporary restraining order and a preliminary injunction barring enforcement of the Ordinance. The district court denied the TRO and consolidated the request for preliminary injunctive relief with the trial on the merits. At the bench trial, the district court ruled in favor of Vicary and enjoined enforcement of the Ordinance. The court found that the purposes of the statute were fulfilled by the barriers between Angel's and the mobile home parks and without an injunction, Vicary's first amendment rights would be infringed. The City filed this timely appeal on April 4, 1996. Circuit Judges Hall and Thompson denied the City's motion to stay the judgment pending the present appeal.
 STANDARD OF REVIEW
 Our review of an order granting a motion for a permanent injunction is limited to determining whether the district court abused its discretion in issuing an order based on erroneous legal standards or clearly erroneous findings of fact. Gaudiya Vaishnava Soc. v. City of San Francisco, 952 F.2d 1059, 1062 (9th Cir.1991), cert. denied, 504 U.S. 914, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992). We review de novo the permanent injunction for constitutional infirmity. Id.
 DISCUSSION
 A. Barrier Exception
 The district court held that the City's interest in enforcing its Ordinance was obviated because both the Corona La Linda and Park Lane communities were shielded from any possible adverse effects by the presence of certain artificial and natural barriers. In enjoining enforcement of the Ordinance against Vicary, the court reasoned that barring Vicary from running her topless bar under the City's 750-foot setback requirement would burden First Amendment freedoms more than was "essential to the furtherance of a governmental interest." Vicary, 935 F.Supp. at 1089 (quoting Barnes v. Glen Theatre, Inc., 501 U.S. 560, 571-72, 111 S.Ct. 2456, 2463, 115 L.Ed.2d 504, 515 (1991)).
 We conclude that the district court abused its discretion in creating an exception to the ordinance in a manner that more properly lies within the province of the City's legislative body. Moreover, the court's exception introduces possibly fatal vagueness into an ordinance that, at least on its face, is clear and specific. See Smith v. County of Los Angeles, 24 Cal.App. 4th 990, 1006-07 (1994) (invalidating statutory buffer zone provision for being insufficiently "narrow, objective, and definite"). In addition, the exception embodies a principle that is subject to unduly expansive application. Not only would every adult business be able to contest various zoning restrictions, but under the reasoning of the district court, a factory or landfill might have a cause of action for locating in a residential zone so long as the location seemed to offer arguably equivalent alternatives to the existing zoning restrictions.
 For these reasons, we reverse the decision of the district court to the extent that it authorized Vicary's adult entertainment use on a theory of equivalent alternatives to the existing ordinance's distance requirements.
 B. Sufficiency of Suitable Sites
 Our conclusion to reject the district court's theory of alternative barriers brings us to Vicary's claim that the ordinance leaves her with insufficient suitable sites in the City to comply with our decisions in Topanga Press, Inc. v. City of Los Angeles, 989 F.2d 1524 (9th Cir.1993), cert. denied, 511 U.S. 1030 (1994), and related cases. Because the district court's barrier analysis made it unnecessary for the district court to address this question, it did not rule specifically on the sites available under a Topanga Press analysis. In the absence of such findings, we are unable to determine the validity of the ordinance, and we accordingly remand for the district court to make the findings necessary in light of the following principles.
 A city must "refrain from effectively denying [adult entertainment businesses] a reasonable opportunity to open and operate ... within the city." City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 54 (1986). An adult entertainment business has been given a reasonable opportunity to relocate if: (1) the available relocation sites provided to a business are part of an actual business real estate market, and (2) after excluding those sites that may not properly be considered to be part of the relevant real estate market, there are an adequate number of potential relocation sites for already existing businesses. Topanga Press, 989 F.2d at 1530.
 Under part one of the test, a site is potentially available: (a) if it is not unreasonable to believe that it would ever become available to a commercial enterprise, e.g., it is not leased by a tenant with a five-year lease; (b) if it suits some generic commercial enterprise, although not every particular enterprise, e.g., it may not be a warehouse, a swamp, or a sewage treatment plant; and (c) if it is commercially zoned. Id. at 1531. If a site is located in a manufacturing or industrial zone, it must further be reasonably accessible to the general public and have a proper infra-structure such as sidewalks, roads, and lighting. Id.
 We emphasize that assuming a relocation site is part of the relevant market, it is not relevant whether a relocation site will result in lost profits, higher overhead costs, or even prove to be commercially infeasible for an adult business. The issue is whether any site is part of an actual market for commercial enterprises generally.
 Id.
 In Topanga Press, the City of Los Angeles, inter alia, prohibited adult businesses from being located: (1) within 500 feet from churches, schools, or parks; (2) within 500 feet of a residential zone; and (3) within 1,000 feet of other adult businesses. 989 F.2d at 1527. The city claimed that there were 11,613.1 acres of "definitionally available" relocation sites, but the court found that much of the land was not potentially available. Id. at 1532. The court found 120 potentially available sites but given the 1,000-foot business-to-business requirement and the fact that most of the sites were clustered together, it concluded that the number of alternate sites was so inadequate as to place a serious hardship on adult businesses without an injunction. Id. at 1533.
 In the present case, the City places at least five restrictions, four of which are location-based, on adult entertainment businesses. The City's location-based restrictions are much harsher than those of the City of Los Angeles, a far larger city, in Topanga Press[4] Here, the City prohibits adult businesses from being located: (1) within 750 feet, rather than 500 feet, away from not only churches, schools, and parks, but also libraries, neighborhood centers or recreational facilities; (2) within 750 feet, rather than 500 feet, of a residential zone; (3) within 500 feet of other adult businesses; and (4) anywhere other than in a heavy manufacturing M-3 designated zone. Moreover, the City requires such businesses to obtain a Conditional Use Permit ("CUP") from the City Planning Commission before opening. Corona Mun.Code § 17.41.
 The district court reported, without conclusively finding, that the City estimated twenty-seven M-3 sites "available" for Angel's relocation. On remand, the court must determine, site-by-site, whether such sites are "potentially available" under part one of the Topanga Press test. We note that the district court properly found the M-3 zoning restriction to be particularly troublesome in this regard. The M-3 restriction goes one step farther than the city in Topanga Press, which assumed commercial land. Any comparison to a "generic commercial enterprise" must weigh in favor of Angel's because many areas zoned for heavy manufacturing would not be suitable for commercial enterprises.[5]
 Under part two of the Topanga Press test, the district court must decide whether the remaining available sites, if any, are adequate. In this inquiry, the district court may consider the effect of the combination of the City's location-based restrictions. See Walnut Properties, Inc. v. City of Whittier, 861 F.2d 1102, 1107-10 (9th Cir.1988) (zoning ordinance which combined 1,000-foot separation requirements between adult businesses with 500-foot separation requirement from residential areas completely foreclosed reasonable opportunity for adult theater to open and operate).
 We note that the CUP requirement standing alone is particularly suspect in this analysis. See Dease V. City of Anaheim, 826 F.Supp. 336 (C.D.Cal.1993) (invalidating CUP ordinance regulating adult entertainment businesses). This requirement could conceivably restrict the number of adult entertainment businesses in the City to zero. The City's expert testified that the City could deny Vicary a permit anywhere, even in potentially available sites, if Vicary "couldn't prove that the surrounding areas would not be harmed by her use."[6] While the constitutionality of the CUP requirement is not before us, the district court may take it into consideration in determining the viability of alternative sites under Topanga Press.
 CONCLUSION
 Accordingly, we remand for the district court to decide whether, taken together, the City's restrictions unconstitutionally limit the reasonable opportunity for adult businesses to open and operate and to grant whatever relief is proper. The injunction allowing Angel's to operate shall remain in effect, at the district court's discretion, until the district court has ruled.
 REVERSED in part and REMANDED.
 
 
 
 **
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 A complete statement of the facts is in the published district court opinion, Vicary v. City of Corona, 935 F.Supp. 1083 (C.D.Cal.1996). A summary of the facts follows here
 
 
 [2]
 At the time, the City Municipal Code required live adult entertainment establishments to be located no closer than 500 feet away from a similar establishment and to obtain a Conditional Use Permit ("CUP") from the City Planning Commission before opening, but allowed them to be located in commercially zoned areas. Corona Mun.Code § 17.41 (1992)
 
 
 [3]
 Vicary raised the point, without substantiation, that one of the two mobile home parks is not even within City limits
 
 
 [4]
 Notwithstanding, it is true that every city is different, and what may be impermissible in Los Angeles, may not be impermissible in Corona. The comparison is provided to give some idea of what is required in other cities. See e.g., Santa Fe Springs Realty Corp. v. City of Westminster, 906 F.Supp. 1341, 1347 (C.D.Cal.1995) (250-foot setback from residential areas required)
 
 
 [5]
 The City's own definition of general industrial uses in its general plan, provides that such areas are:
 designed to accommodate uses which, due to operational factors, may have negative impacts on adjacent areas due to noise level, smoke, dust, air pollution, glare, heat, vibration or other conditions.
 In addition, industrial roads in such areas are not suited for heavy vehicular use. In the City, fire regulations require at least two access points to commercial areas, but no such access points to industrial areas.
 
 
 [6]
 We note that such licensing procedures are invalid if the government official authorizing such permits is given "unbridled discretion" in deciding whether to deny or permit the expressive activity at issue. See, e.g., City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 759, 108 S.Ct. 2138, 2145, 100 L.Ed.2d 771 (1988) ("[A] facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech...."); Gaudiya Vaishnava, 952 F.2d at 1062-63 (striking down ordinance to the extent that it permitted denial or revocation of permit on basis of discretionary judgment by police chief)